## HARRISON VS. TRADER and wife.

29   85<br>
f79   480<br>
29   85<br>
f87   231

1. ATTACHMENT: *How levied, and effect of.*
   A public declaration by an officer to whom a writ of attachment was directed that he attached certain land as the property of the defendants named in the writ, made in the presence of a citizen of the county, was a good levy under the 7th section of the act of March 7, 1867, and created a lien on the land from the date of the attachment.

2. — *How and when the lien is created.*
   The lien of an attachment springs by operation of law out of the act of the plaintiff in bringing his suit properly, and of the officers in issuing and serving the process, and upon the performance of these acts, the lien, though inchoate, is perfect and substantial.

3. — *Lien preserved upon reversal of judgment of dissolution.*
   When in a proceeding by attachment and levy upon land, judgment is rendered against the plaintiff and the attachment dissolved and he takes an appeal, which is dismissed for failure to file the transcript in time; after which he prosecutes a writ of error and procures a reversal of the judgment below, without filing a *supersedeas* bond in either case, the lien of the attachment is preserved as between the parties.

4. APPEAL: *Ttransfers jurisdiction to appellate court.*
   On appeal or writ of error, jurisdiction of the cause is transferred to the appellate tribunal, and proceedings in the inferior court are wholly suspended, except in so far as the statute requiring *supersedeas* bond authorizes the issuance of execution.

5. — *Effect of reversal of judgment.*
   Where judgment is reversed on appeal or writ of error, the rights of the parties stand as if no action had been taken by the inferior court.

6. BILL OF EXCHANGE: *Notice of nonpayment.*
   When the drawer of a bill of exchange promises to furnish the accommodation acceptor the means to meet the paper at maturity, and fails to do so, he is not entitled to notice of nonpayment.

APPEAL from *Phillips* Circuit Court.

Hon. W. H. CLAYTON, Circuit Judge.

Harrison vs. Trader and wife.

*Rose* and *Palmer & Sanders*, for appellant.
*Hanley & Stewart, contra.*

WILLIAMS, Sp. J.   This suit was commenced in the Phillips circuit court on the 14th of February, 1867.   A writ of attachment was issued, upon which the sheriff made the following return, to wit:

"I executed the within writ of attachment at Phillips county, Arkansas, on the 29th day of March, 1867, by declaring publicly, in the presence of Cameron Biscoe, a citizen of my county, that I did attach the following named lands as the property of the within named defendant, William H. Trader and Ellen Trader his wife." (Here follows a description of the land.) "Levied on by virtue of the within writ of attachment. The said William Trader and Ellen Trader, his wife, are not found in my county.   BART Y. TURNER, *Sheriff.*"

Under the 7th section of the act approved March 7, 1867, this was a good levy on lands, and created a lien on the lands of defendants from the date of the attachment.

This suit was founded on a bill of exchange drawn 13th of March, 1861, by Ella R. Newsome and T. S. N. King, on Bartly Johnson & Co., New Orleans, and made payable on 20th of February after date, to Ella R. Newsome.   The bill was indorsed by Ella R. Newsome to plaintiff.   This suit is brought against Trader and his wife as one of the drawers, she having intermarried with defendant, W. H. Trader.

There are three counts in the declaration.   The first avers presentment to the acceptors at maturity, which, allowing grace, was 23d day of February, 1862, and refusal to pay and notice to defendants.   The second count avers that no demand was made upon acceptors at maturity, and no protest and notice was given until July 8, 1862, for the reason that a state of war existed, and there was no intercourse between New Or-

leans, Louisiana, and Lexington, Kentucky, the former being the residence and domicile of the acceptors, and the latter the home and residence of the holder, Harrison; that on July 8, demand of payment was made on the acceptors, and they refused to pay, and protest and notice to defendants, etc. The third and last count avers the presentment of the bill for payment, and the refusal of the acceptors to pay, and the protest, and avers as an excuse for notice as follows: plaintiff in fact says that the said Ella N., and the said King had no effects in the hands of the said Bartly Johnson & Co., from the time of the said making of the said bill of exchange to the presentation and protest of the said bill of exchange, nor had they paid the said Bartly Johnson & Co. any consideration for the acceptance and payment thereof, and that they were not damaged for the want of notice of the protest thereof. On the 9th of January, 1868, the appellees filed separate pleas of the general issue, and the appellee, W. H. Trader, filed also a separate special plea in bar; to which last plea the appellant interposed a demurrer, which was by the court below overruled, and a final judgment in bar was rendered in favor of defendants therein. From this judgment the appellant appealed. His appeal was dismissed by this court on the 27th day of January, 1870. See *Harrison v. Trader and wife*, 25 Ark., 621. The appeal was dismissed because the transcript was not filed within the time prescribed by law.

Appellant sued out a writ of error on the 1st of March, 1870, one month and four days after the appeal was dismissed in this court. There was no supersedeas, or bond, either on the appeal or writ of error. At the December term, 1870, of the supreme court, a motion was made to dismiss the writ of error, which was overruled. See 27 Ark., 59. At the December term, 1871, this court reversed the judgment of the court

below, and ordered it to sustain the demurrer to the plea of Trader.  27 Ark., 288.

When the mandate of this court was filed below, the demurrer to Trader's special plea was sustained, and the case was tried upon the general issues by the court below sitting as a jury.  The court found the issues for the plaintiff, and rendered judgment *in personam* against defendants, but on motion of appellees, expressly refused to order the judgment to be executed against the property attached.

The record entries are as follows:

"Now on this day come the parties in this cause, and announcing themselves ready for trial, and neither party requiring a jury, this cause is submitted to the court sitting as a jury, when the defendant filed his notice of what he intended to give in evidence, and notice that he should ask the court not to declare any judgment, it might render a lien upon the lands attached herein; and the court heard the evidence, proceeded to declare the law as contained in the seven propositions filed, to which judgment of the court in declaring the 3d, 4th, 5th, 6th and 7th propositions as law, the said defendant excepted at the time.  The court thereupon proceeded to find the facts as stated in the finding of facts filed in the cause, and the court being sufficiently advised, etc., doth find that the said defendants are indebted to the said plaintiff in the sum of four thousand, two hundred and thirty-seven dollars. It is therefore considered by the court that the said plaintiff do have and recover," etc.

And after thus rendering judgment, the court proceeded to order as follows: "Inasmuch as no supersedeas was issued, nor bond given on the appeal or writ of error, it is further considered by the court that the attachment lien was lost by the judgment of this court pronounced at the November term,

1867, December 1, 1867, to which judgment of the court that the attachment lien was lost, said plaintiff excepted at the time, and brings here into court his bill of exceptions, which is signed, sealed," etc.

Plaintiff below prepared and filed an elaborate bill of exceptions, and motion for new trial, setting out in full all the evidence, and made a motion for a new trial on the whole case, as well as on the ground of refusing to recognize the attachment lien, which was overruled by the court below, to which appellant excepted. This was a work of supererogation on his part, for the declaration, writ, return and proceedings of this court, and of the court below, are all of record, and sufficiently presented the point involving the adverse decision, in which the court below practically held the attachment lien void, and rendered a personal judgment only. It may be fortunate for the plaintiff that defendant filed no motion for new trial, and took no appeal from the personal judgment, or rather, it might have been in such case attended with some risk, for the facts in his bill of exceptions might have been used against himself.

The appellees have gone extensively into the facts and instructions, as set out in the bill of exceptions of appellant, but as they have filed no motion for new trial, nor have appealed, we would not reverse the personal judgment against them on the case before us.

In this case the court found that the draft was drawn in March, 1861, and accepted for accommodation of drawers, to be paid one year afterwards, on an express promise made by the drawers to the acceptors, that cotton was to be shipped to meet it at maturity; that this cotton was not shipped. A jury might, upon this state of facts, have well found, that no notice was necessary, and the court should have instructed a jury that want of effects of drawer in the hands of accommodation

acceptor, under such circumstances, would excuse notice; for, but for the existing war, the failing to ship cotton would have been a fraud, which the war did not so far excuse as to render demand and notice necessary. As the court acted as both court and jury, we find nothing in the declarations of law and the finding on this point, so shockingly iniquitious as to justify us in reversing the personal judgment.

The whole question then is, Was the lien of the attachment lost by the erroneous judgment of the court below on the demurrer, and the appeal and writ of error without supersedeas ?

Proof was introduced to show that after the appeal was taken, and pending the same, Trader and wife sold the land. While we cannot assume to conclude the rights of parties not before us, we cannot, on the other hand, swerve from our duties by a consideration of possible results. We shall decide this case just as the court below should have done as between the parties, and unless such purchasers have intervened by interplea, all evidence on the subject of the purchase was extraneous. We do not decide that the purchasers could have interpleaded. We simply mean to say that the purchasers' rights were not before the court properly, and are not here before us.

The court below having refused to declare the judgment rendered by it a lien on the land attached, and having expressly refused to allow its judgment to be executed against the attached property, and refused to enforce the attachment lien in the only mode known to the law, the plaintiff having duly excepted to the action, the question before us is, whether this action of the court below is warranted by law. On the part of appellees, it is contended that, by the taking of the appeal without supersedeas, and the ultimate dismissal of that appeal in this court was an affirmance of the judgment of the court below, which, it is contended, was an implied dissolu-

Harrison vs. Trader and wife.

tion of the attachment; and the bringing of a writ of error was a new suit; and being taken without surpesedeas, the judgment below remained in force. We might hesitate, were the question new, to decide, after the dismissal of an appeal for want of being prosecuted in time, that a writ of error might be prosecuted ; and might feel strongly inclined to agree with appellees that the dismissal of the appeal was an affirmance. But we have not looked into that question, because, in this case, this question is *res adjudicata*, and it is the law of this case that a writ of error lay after the appeal was dismissed ; and if the writ lay in the case, we know of no rule which would limit its operation. The plaintiffs had the statutory period within which to bring it, and all his rights remained unimpaired, although in abeyance until vitalized by the action of this court compelling the court below to withdraw the bar which it had interposed by sustaining erroneously the plea in bar. Appellees cite authorities to show that in case of dissolution of an injunction, an appeal without supersedeas does not reinstate it.

The first case cited is *Hart & Hoyt v. The Mayor and Aldermen, etc.*, 3 Paige, 381. In this case it was held that in the absence of statutory provisions, no appeal from an order dissolving an injunction would restore it, and that there must be an order from the proper court reinstating it pending the appeal, citing *Hoyt v. Gelston*, 13 Johns., 139 ; *Wood v. Dwight*, 7 Johns. C., 295. In the case in 3 Paige, above cited, the chancellor uses this pertinent language : " It is there insisted that an appeal from an order or decision of the court refusing to grant an injunction gives to the applicant the full benefit of an injunction pending the appeal, and restrains the other party from proceeding." The chancellor thereupon proceeds to decide that the appeal has no such effect. All the other cases cited by appellees are kindred cases of injunction, except the

case of *Simpson v. Simpson*, 25 Ark., 487, which was a divorce case. The appellee quotes the language of Justice McClure in the case, in which the late distinguished chief justice facetiously remarks : " If Mrs. S. had married after the decree of divorce and before the taking of an appeal by the appellant, we doubt if the reversal of this judgment would have restored her to the loving embrace of Enoch H. Simpson." This remark of Justice McClure was mere dicta ; but if good law, has no analogy to this case, for a criminal prosecution for bigamy would have been the only remedy Enoch would have had, as there is no writ known to the law to force a wife to the " loving " embrace of a divorced husband ; and the want of criminal intent would have acquitted Mrs. Simpson in the given case. But it might be quite a different question if the legitimacy of the issue of such a second marriage was presented.

The cases cited by appellee in reference to injunctions indicate clearly the line of distinction between injunctions and attachments. An injunction exists by and inheres in the order of the court ; that removed, there is no injunction, and in the absence of a statute, even an appeal with supersedeas would not continue the injunction without an order of some court of competent jurisdiction. Kerr on Inj., 214.*

But in attachment liens, the right grows from and inheres in the law, and the act of the plaintiff in bringing . suit properly, and the clerk in issuing the writ, and the sheriff in levying it on defendant's property as the law directs. These acts being performed, the lien, though inchoate, is. perfect and substan-

*This dicta is sustained by the following authorities : Kerr on Inj., marg. p. 636, note ; *Hicks v. Michael*, 15 Cal., 107 ; *Merced Min. Co. v. Fremont*, 7 id. 130 ; *Garrow v. Carpenter et. al.*, 4 Stew. & Porter (Ala.,) 336 ; *Boren et. al. v. Chisholm*, 3 Ala., 513. *Contra, Turner v. Scott*, 5 Randolph, 332.— Rep.

tial; as much so as the lien of a mortgage when properly executed, acknowledged and recorded; as much so as a mechanic's lien, when the work is done, and the lien proven and filed in the clerk's office, as the law directs; as perfect as a vendor's lien, where his purchase money is unpaid for real estate.

If in any one of these cases, any one of these lien-holders has to apply to a court for its action, to enforce his lien, which action of court is equally necessary to all the above liens, would it be contended that the erroneous action of the court in refusing redress, by which the party would be driven to an appellate tribunal, would so far impair his rights as to prevent their enforcement at all?

It is contended that there is here an intervening purchaser. We have no such case before us. This plaintiff is entitled to enforce his lien against the land attached. If there is a purchaser who can establish in fact, or in law, that he is not a purchaser *pendente lite*, and occupies a better attitude than the defendant, by reason of any fact or circumstance, or that he got more than his vendor could have, to wit: the land free of the lien by reason of estoppel of plaintiff by some act or declaration, we will decide his case when properly presented.

In the case of *Earle v. Couch*, 3 Metc., 450, the facts were, that a bill was filed by creditors of James D. Couch, to set aside a conveyance of slaves to his wife, which, it was alleged, was made to defraud Couch's creditors. In the transaction, one Armstrong conveyed certain slaves to a trustee for Mrs. Couch, and received conveyance of other slaves. Armstrong, in his answer, denied that he had any knowledge of any fraudulent intent on the part of Couch; alleges that the transaction on his part was honest; that he had conveyed four slaves, Esther, Frances, Sam and Henry, to Thompson in trust, in consideration that J. D. Couch had conveyed to him the slaves in controversy and his interest in his father's estate. Arm-

strong makes his answer a cross-bill against John Couch, the infant son, and only heir of Mrs. Mary F. Couch, who was then dead, and against the administrator of Thompson, Mrs. Couch's trustee, who was also dead; and suggests that if the deed from James D. Couch to him should be adjudged fraudulent, and he should be deprived of the property therein conveyed to him by Couch, that his deed to Thompson, the trustee, should be cancelled, and he be restored the slaves therein conveyed. John Couch, a minor, the only heir of Mrs. Mary Couch, was made a defendant to the creditors' suit against J. D. Couch and Armstrong. On the 13th day of September, 1850, a decree was rendered by which both of the deeds were set aside, to wit: the one from J. D. Couch to Armstrong, and the one from Armstrong to Thompson, in trust for Mrs. Couch.

The slaves which had been conveyed by Armstrong to Thompson were delivered to Armstrong by order of the court, who sold the slaves to persons who were cognizant of the suit and its results. This decree stood until 1858, when John Couch, who had answered the former suit by *guardian ad litem*, filed his bill of review; upon hearing of which the former decree was set aside, and the case opened as to the rights of the infant John Couch; from which decree the purchasers of the slaves from Armstrong, who were parties, appealed. In delivering the opinion of the court, Judge Peters uses this language:

"But another question materially affecting the interest of all the appellants is presented; and that is, are they to be regarded as purchasers *pendente lite?* At the time the original decree was rendered, the appellee was an infant, and so was when the bill of review was filed. The several purchases were made by appellants between those periods. Said decree, when they made their purchases, was liable to be

reviewed and set aside upon a bill of review, or reversed by suing out a writ of error;" and cites the case of *Clary v. Marshall's Heirs*, 4 Dana, 95, wherein that court held that a purchaser of a tract of land from a party who had obtained a decree and conveyance of the land from a commissioner appointed by the court for the purpose, which decree was set aside upon a bill of review filed after his purchase, acquired no better title to the land than his vendor had; that he was a purchaser *pendente lite*, and bound by the proceeding under the bill of review. He also cites *Debrell v. Foxworthy*, 9 B. Monr., 228, where the same rule was applied. He then concludes: "We see no reason why the same rule should not apply here." We think these cases bear a striking analogy to the case now before us.

In the case of *Simmon v. Price*, 18 Ala., 405, in which was the question of an administrator's final settlement, and the right of a former administrator, who had finally settled, to call a subsequent administrator *de bonis non*, to account for liabilities of the estate to him as former administrator. From the action of the orphan's court appeal was prosecuted; pending the appeal without supasedeas, the administrator *de bonis non* had distributed the estate to the heirs, and his settlement had been made and approved by the orphans' court. The supreme court of Alabama held that this did not debar the original administrator from requiring of his successor a final settlement with him, which was the matter involved in the appeal. In delivering the opinion of the supreme court, Dargan, C. J., uses this language: "When a judgment is reversed, the rights of the parties are immediately restored to the same condition in which they were before its rendition; and the judgment is said to be mere waste paper," and cites *Dupuy v. Roebuck*, 7 Ala., 484.

In the case of *Argenti v. San Francisco*, 30 Cal., 461, the su-

preme court of California held that the consequence of the reversal of a judgment was, that the parties in the court below have the same rights which they originally had, citing *Phelan v. Supervisors of San Francisco*, 9 Cal., 15; *Steane v. Acquire*, 7 id., 443.

Mr. Drake, in his work on Attachments, sections 411, 412, says: "The dissolution of an attachment necessarily discharges from its lien the effects or credits on which it may have been executed, whether reduced to possession by the officer, or subjected in the hands of garnishees. When dissolved, the defendant is entitled to a return of the property on demand, unless the judgment of dissolution be suspended by writ of error or appeal. This, it is said, takes away the defendant's right to demand the property, and the officer, if he have notice of the writ of error or appeal, would not be justified in returning the property. But if before writ of error or appeal the defendant demand it, and the officer gives it up, the latter cannot afterwards, on reversal of the judgment, be held responsible for it.

The dissolution of an attachment, however, does not, it appears, so far destroy it, that under no circumstances can the plaintiff, upon the reversal of the judgment, reassert his right to the avails of the attachment. Thus, where two attachments were executed on the same effects, and that first executed was quashed, and the judgment quashing it was reversed, but in the mean time the property was sold and the proceeds paid to the plaintiff in the second attachment, it was decided that the first attachment creditor was entitled to recover from the second the sum paid to him, citing *Carpenter v. McCorkle*, 9 Grattan, 177.

But where over three years had elapsed before the writ of error was prosecuted, it was held in *Morrow v. Holloway*, 3 G. Greene, 157, that the attachment was not revived as against

Harrison vs. Trader and wife.

third persons.   This was based purely upon the ground of the unreasonable delay.

These decisions have reference to personalty; as to which it is necessary that a reasonably prompt conclusion to the litigation must be had.   If not, the party delaying may impair his rights.   But as to real estate, the law is somewhat different. Says Mr. Drake, at sections 239, 240, " The effect of an attach ment of real estate is to give plaintiff a lien upon the property and this lien has been held to be as specific as if acquired by the voluntary act of the debtor, and stands on as high equitable ground as a mortgage, citing *Carter v. Champion*, 8 Conn., 549.' * * " Unlike the case of a levy on personalty, the officer levying acquires no lien or special property in the land.   He is not required or authorized to take possession of it, nor in any event is he accountable for it, or for its rents.   His agency and authority are terminated whenever the duties are performed for which process was put into his hands.   The lien created by the attachment, whatever may be its character, is in the attaching creditor, and he only can release or discharge it." Much stress is laid in the argument of appellees as to the want of a supersedeas.   The office of a supersedeas is merely to suspend the execution of a judgment.   There was no execution to be suspended, except for cost in this case.   The law, as it then stood and now is, required a bond only for the purpose of indemnifying the party, whose execution was suspended, for the delay.   The plaintiff below was willing to pay the costs, or risk an execution for them, and no other judgment needed a supersedeas.

The consequence of the judgment of the court was a dissolution of the attachment; the appeal suspended the judgment as to every thing except its execution for money due for cost, and but for the statute which prohibits appeals and writs of error from suspending the execution of judgments unless a

Harrison vs. Trader and wife.

a bond is given, the effect of appeals and writs of error would be to suspend all action in the court below for all purposes, because the jurisdiction of the cause is no longer there, but is transferred to the appellate court. Our statute extends only to supersedeas of executions, all other features of the court's action are suspended by an appeal or writ of error; and if the cause is reversed, the rights of parties stand as though no action had ever taken place in the inferior court. In this case, what better bonded indemnity did defendants wish than the original attachment bond, which was good until the case was finally disposed of?

It is argued also that titles are jeopardized if the law is, that the lien is restored and relates back; that a purchaser finds a clean title on the record, except a dissolved attachment, as to which the party has three years within which to appeal, etc. If a party desiring to purchase a tract of land finds it in this condition, he is bound to know the law, and he can either let his purchase alone, or apply to the plaintiff in the attachment and get a direct statement, which will estop him, that he does not intend to prosecute it. If he fails to do this he takes the chances and risks of showing some act or circumstance other than the mere dissolution, to warrant him in claiming to be an innocent purchaser.

We therefore, find no error in the proceeding of the court in rendering judgment against defendants herein, and the same is affirmed; but finding error in the proceeding of the circuit court of Phillips county in holding and declaring that the lien of plaintiff on the land attached was lost, and in refusing to order execution against the same, said orders and rulings are in all things reversed, annulled and set aside, with costs, and the judgment of the court below will be executed accordingly.

ENGLISH, C. J., did not sit in this case.