(Decided 9th February, 1883.)

---

EDWARD HIGGINS, JUNR. and EDWARD R. E. COBB, trading as HIGGINS, COBB & CO. *vs.* JAMES H. GRACE and AARON D. GRACE, trading as JAMES H. GRACE & BROTHER.

*Province of Court and jury—Fraudulent Contract—Instructions to the Jury—Attachment—Effect upon the Attachment, of a Verdict and judgment in favor of the defendant—Irregularity of order Quashing attachment.*

The legal sufficiency of evidence is for the Court, but its weight, for the purpose of establishing an inference sought to be drawn from it, is for the jury.

Where a contract was assailed for fraud, and under instructions granted the only issue left to the jury to try, was that of fraud *vel non*, it was HELD:

1st. That it was error to grant a prayer on the part of the defendants which wholly ignored all the evidence in respect to the alleged fraud, and gave prominence to facts antedating the alleged fraudu-

lent contract, and transactions in which there was no pretence that any misrepresentations were made, in such a way as to create the impression on the mind of the jury, very possibly, that such transactions were evidence that no fraudulent representations were made at the making of the contract.

2nd. That the fact of calling their creditors together by one of the defendants (some days after the alleged fraudulent contract was made) who had no part in making the contract, or his offer then made of settlement or compromise; the presence of the plaintiff at the time of such offer, and his withdrawal from the meeting, and immediate institution of suit, did not tend in the slightest degree to rebut the evidence respecting the fraud in procuring the contract, upon which alone the jury were to pass; and the introduction of those facts into the prayer was giving them misleading prominence.

After verdict and judgment in favor of a defendant in attachment, rendered on the 8th of June, 1881, the Court, on the 24th of June, quashed the attachment. On appeal from the order quashing the attachment, it was HELD:

1st. That judgment upon the short note case in favor of the defendant, by operation of law dissolved the attachment, and put it to an end, subject only to revival by reversal of the judgment.

2nd. That it was irregular and erroneous to pass any such order at that time.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.* The evidence being closed on both sides, the plaintiffs offered the four following prayers:

1. That if the jury find from the evidence, that the debt sued for, was fraudulently contracted by the defendants, the plaintiffs are entitled to maintain the attachment in this case.

2. That the false and fraudulent representations of either of the defendants, whereby the plaintiffs were induced to deliver the goods mentioned in the evidence; should the jury find such false and fraudulent representations, and

that the same were made with intent to deceive the plaintiffs, is sufficient to entitle the plaintiffs to maintain the attachment in this case.

3. That if the jury find the fraudulent contracting of the debt, and that the goods mentioned in the evidence, were in fact, delivered under such a contract, and that the note of Billups mentioned in the evidence, was offered to be returned by plaintiffs to the defendants, and that said note is now on the trial table, produced by counsel of defendants on the call of the plaintiffs, the plaintiffs are entitled to recover.

4. That if the jury find from the evidence that the purchase of the goods mentioned in the evidence, was made by the defendants when, in point of fact, they were insolvent, and unable to pay their debts, and that they had no reasonable expectation of paying for the same according to the terms of the contract, and knew that such was their condition, and that the plaintiffs did not know, and could not by ordinary prudence, have known of the existence of such fact, then the purchase of said goods was a fraudulent contract of the debt sued for, and entitles the plaintiffs to maintain this attachment; and if the jury find the actual sale and delivery of the goods, under the circumstances above set forth, the plaintiffs are entitled to recover; provided, the jury find that the defendants now have the note of Billups, mentioned in the evidence.

The defendants offered the four following prayers:

1. That there is no evidence in the cause upon which they can find that the defendants in this case had absconded, or intended to abscond.

2. That the evidence in this cause does not justify a finding that the defendants in this action, had assigned, disposed of or concealed their property, with intent to defraud creditors.

3. That there is no evidence in this cause upon which they can find that the defendants had removed, or were

ever about to remove their property, or any portion thereof, out of the State, with intent to defraud creditors.

4. That if the jury believe that the defendants had, for eight or ten months previous to the purchase of goods from the plaintiffs, on Dec. 21st, been dealing with the plaintiffs and where the transactions exceeded one hundred dollars, had on several occasions, passed the note of Jos. R. Billups to ——, endorsed by James H. Grace & Brother, and plaintiffs had accepted such notes, and used them in their business, and that said notes had always been paid at maturity, and that the purchase of goods on Dec. 21st, which is the ground of action in this cause, took place at open auction, and the defendants passed to the plaintiffs the note of Jos. R. Billups, endorsed by James H. Grace and Brother, precisely as had been previously the custom between them, and that Higgins & Cobb receipted for said note, as shown in evidence ; and they shall further find that on the 30th of December, the defendants, finding themselves no longer able to carry on the business, through their legal adviser called a meeting of their creditors for the purpose of surrendering all their property for impartial distribution among creditors, and that said Higgins having attended the same, withdrew from the meeting and went directly to his attorney, where he procured the attachment in this cause to be laid, and on that evening made the affidavit in this cause, and that subsequently the note of Jos. R. Billups was carried to the store of the defendants, and there tendered in surrender, which surrender was refused, then the jury are at liberty upon this and other evidence in the cause, to find for the defendants.

The Court (GILMOR, J.,) granted all the prayers of the plaintiffs.

The first prayer of the defendants was conceded, and the Court granted the defendants' other prayers.

The plaintiffs excepted, and the verdict and judgment being against them appealed.

The cause was argued before MILLER, STONE, ALVEY, ROBINSON, and IRVING, J.

*Charles Marshall*, for the appellants.

*Innes Randolph*, for the appellees.

IRVING. J., delivered the opinion of the Court.

On the 31st of December, 1880, the appellants sued out an attachment against the appellees, under the Act of 1864, making by affidavit the several charges of fraud mentioned in the Act. A declaration or short note was filed, a plea interposed and the case came on for trial upon an agreement waiving all errors of pleading, and admitting all testimony which would be admissible under any state of pleading and issues. Verdict and judgment being for the defendants, the plaintiffs appealed. It appears from the evidence in the record, (all of which was introduced by the plaintiffs and none by the defendants) that the plaintiffs were auctioneers, with whom the appellees were in the habit of dealing; and that on the 21st of December, 1880, Aaron Grace, one of the partners and appellees, purchased a bill of goods costing $249.62, which were not delivered until after an interview with Aaron Grace, on the 27th of December, 1880. On that day, the plaintiffs having sent for the defendants, Aaron Grace came, and the appellants told him they were unwilling to deliver the goods. In reply he said: "We will give you a note of J. R. Billups." Appellants inquired who J. R. Billups was, and Aaron Grace replied: "He is a man who is trading with me, a party who is buying goods from us, and I will give you his note, endorsed by ourselves." Upon that assurance appellants agreed to deliver the goods, and did deliver them, receiving the note of J. R. Billups for $253, endorsed by Jas. H. Grace & Bro. Upon the 30th of December, three days after the delivery of the goods,

appellants received a postal card from the attorney of the appellees inviting the creditors of James H. Grace & Bro. to a meeting. Appellants went, and then learned that Aaron Grace had absconded, and that James H. Grace offered the creditors one thousand dollars for division, or that they might take the goods which remained, the estimated value of which was about one thousand dollars. As far as could be learned the debts were supposed to be four or five thousand dollars. Appellants inquired how it was, that they were named among the creditors, saying, we have the note of J. R. Billups. Some one then said, "we are all Billups," and said "Billups was only an employé of the firm (James H. Grace & Bro.)" It appeared that most of the creditors had notes of the same person, endorsed by James H. Grace & Bro.; and Billups testified he was only an employé of appellees at weekly wages; and that though he had frequently given similar notes to appellees, he never paid any of them with his own money, but that appellees had always taken up the notes; or if Billups did so, he did it with the money furnished by appellees. It was also in evidence that appellants had before that time on several occasions taken the note of J. R. Billups for purchases, but that they did not know who he was; and that at the last sale they specially inquired, and were told, as already stated; and that they never knew who he was *in fact* till they learned at the meeting of the creditors on the 30th of December. It was in evidence that James H. Grace called the meeting of the creditors, but was not present in person; that he was a partner on equal terms with Aaron; the former contributing the capital, and the latter the experience; that James had no other connection with the business, but was employed at a salary, and at work elsewhere. It was shown that James had in November and December, 1880, given his brother $265.00 to pay bills, but there was no evidence what was done with it. It appeared that on the 17th of January,

Higgins, Cobb & Co. *vs.* Grace & Brother.

1881, James H. Grace applied for the benefit of the insolvent laws of the State. The deposition of James H. Grace taken in another case and offered as his declaration in this case, showed that Aaron had absconded without leaving intelligible account of the affairs of the firm, and that the firm was hopelessly insolvent. A larger summary of the evidence is not deemed necessary for the purposes of this decision.

All the plaintiffs' prayers were granted, and the exception only applies to certain instructions granted on the part of the defendants. Objections to the third prayer were abandoned at the hearing in this Court; leaving only the second and fourth prayers controverted.

By fair construction we think the second prayer only instructed the jury that there was no legally sufficient evidence of the acts mentioned in the prayer; and notwithstanding the suspicious aspect of things connected with the transaction, we think the Court was justified in saying there was no legally sufficient proof of the specific acts mentioned in the prayer. It does not appear within what time the debts had been contracted; nor how large their sales had been within the period of the purchases for which the debts were created; nor that any of the goods were sold, otherwise than in regular trade ; nor that the $265 was not paid away legitimately. In the absence of other proof than exists in the record on that subject, we think the Court committed no error in granting the appellees' second prayer.

In granting the fourth prayer of appellees we think there was error. It was clearly calculated to mislead the jury, and was objectionable for several reasons. It wholly ignores all the evidence in respect to the fraudulent representations through which delivery of the goods was secured ; in other words the alleged fraud in contracting the debt; and also includes and gives improper prominence to facts recited which have no bearing upon the issue of

fraud *vel non* in the contraction of the debt ; which, under
the other instructions given, was the only issue left for the
jury to try.　With respect to that issue, the Court had
told the jury, in the instructions asked for by the plaintiffs
and granted, that if the debt was fraudulently contracted
the plaintiffs were entitled to recover.　They were told
that fraudulent representations of one partner would sus-
tain fraud in the contract; and that if the goods were de-
livered upon such fraudulent representations of one part-
ner which induced the contract, and that the Billups' note
taken for the goods was offered for surrender, that the
plaintiffs were entitled to recover.　They were further
told that if the contract was made by the defendants with
a knowledge of their insolvency, and that they had no
reasonable expectation of paying, and that plaintiffs did not
know it, and by ordinary prudence could not have known
it, the contract was fraudulent.　In the face of such in-
structions, necessarily based on evidence tending to es-
tablish the facts enumerated, we think the Court below
erred in granting the fourth prayer of defendants.　They
are substantially told by this instruction that notwith-
standing the evidence of fraudulent representations, at the
time of the contract, from which they were told they might
find the contract was fraudulent ; yet if they should find
the plaintiffs " had on several occasions received Billups'
note endorsed by James H. Grace & Bro., and used by
them in business, and that said notes had always been
paid at maturity, and that the purchase of goods on De-
cember 21st took place at public auction, and defendants
passed the note of J. R. Billups, endorsed by James H.
Grace & Bro., precisely as had been previously the custom
between them," then they might infer there was no fraud
and might find for the defendants.　It was in effect saying
that such previous transactions, wherein notes of Billups
were taken, but wherein and whereat there were no mis-
representations respecting Billups, were sufficient to over-

come the evidence respecting fraud in the last transaction. It does not matter that they were told that if they found these facts they might infer from them and "the other evidence in the cause" that there was no fraud in procuring the contract. It was the giving prominence to facts antedating the contract, and transactions in which there was no pretence that any misrepresentations were made, in such way as to create the impression in the mind of the jury, very possibly, that such transactions were evidence that no fraudulent misrepresentations were made at the making of this contract, that makes the prayer objectionable. The legal sufficiency of evidence is for the Court, but its weight for the purpose of establishing an inference sought to be drawn from it, is for the jury. *Maltby vs. Northwestern Va. R. R. Co.*, 16 *Md.*, 445. The jury could consider the whole evidence and say whether it established fraud in procuring the contract, but the Court invaded the jury's province when the Court told the jury, as they may well have understood the instruction, that such previous business intercourse and dealing, as was set out in the prayer, forms sufficient ground from which to infer there was no fraudulent representation in procuring the contract.

In addition to what we have said, we may add, that we do not not see how the fact of calling the creditors together by James H. Grace, (some days after the contract was made) who had no part in making the contract, or his offer then made of settlement or compromise ; the presence of one of the plaintiffs at the time of such offer, and his withdrawal from the meeting, and immediate institution of suit, tends, in the slightest degree, to rebut the evidence respecting the fraud in procuring the contract upon which alone the jury was to pass. The introduction of these facts into the prayer was giving them misleading prominence.

After verdict and judgment in favor of the defendants which was rendered on the 8th of June, 1881, the Court on the 24th of June quashed the attachment. Judgment

upon the short note case in favor of the defendants by operation of law dissolved the attachment and put it to an end, subject only to revival by reversal of the judgment. The order quashing the attachment has been appealed from. It was certainly irregular and erroneous to pass any such order at that time, and the order will be reversed with the reversal of the judgment.

*Judgment reversed, and*
*new trial ordered.*

(Decided 9th February, 1883.)