## HUMBLE OIL & REFINING CO. v. ANDREWS. (No. 1880.)

(Court of Civil Appeals of Texas. El Paso. May 27, 1926. Rehearing Denied June 17, 1926.)

**1. Mines and minerals ⬥48.**

Oil in place is a part of "realty."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Real Property.]

**2. Mines and minerals ⬥73.**

Oil lease operates to sever oil from balance of realty.

**3. Attachment ⬥178.**

Levy of attachment on oil lease attaches lien to oil thereafter severed from realty.

**4. Attachment ⬥186.**

Persons removing oil after attachment of oil lease become liable as for waste and conversion for oil removed.

**5. Attachment ⬥186.**

Person converting property attached is liable in damages, where judgment debtor is insolvent, and conversion was made with full knowledge of creditor's claim.

**6. Appeal and error ⬥460(2).**

Under Rev. St. 1911, art. 270, perfecting appeal from judgment in due time preserves lien of attachment pending determination of appeal, without necessity of supersedeas bond.

**7. Judgment ⬥585(3).**

Judgment relieving garnishee from liability *held* not res adjudicata of later action, based on conversion of property covered by attachment.

**8. Limitation of actions ⬥55(1).**

Cause of action for damages does not accrue to attaching creditor against one converting part of attached property until sale of remainder has shown that creditor has not full satisfaction of judgment.

Error from District Court, Comanche County; Jos. Eidson, Judge.

Suit by P. W. Andrews against the Humble Oil & Refining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Scott W. Key, of Eastland, and Hines H. Baker and John C. Townes, Jr., both of Houston, for plaintiff in error.

Jerome P. Kearby, of Comanche, for defendant in error.

HIGGINS, J. This suit was filed December 31, 1924, by the defendant in error, Andrews, against the plaintiff in error, Humble Oil & Refining Company, to recover damages in the sum of $5,000, the alleged value of seven-eighths of the oil produced from a five-acre oil and gas lease.

Judgment was rendered in favor of Andrews for $4,971.76, being the value of seven-eighths of the oil produced from the lease from November 21, 1921, to February 4, 1924.

The material facts are as follows: In May, 1921, Andrews sued the Manhattan Texas Petroleum Company to recover a debt, and sued out a writ of attachment, which was levied May 28, 1921, on said oil and gas lease. This suit was numbered 6456. Andrews in that case also caused to be issued and served a writ of garnishment upon the Humble Oil & Refining Company. In the garnishment suit the garnishee impleaded A. H. Woodfin, R. Q. Williams, and others, and tendered into court the value of the oil produced from the lease and theretofore purchased by it.

The garnishment suit was consolidated and tried with the main suit, and, upon November 21, 1921, judgment was rendered that Andrews take nothing, and title to the oil and gas lease was divested out of the Manhattan Texas Petroleum Company and vested in Woodfin on his cross-action for the use and benefit of R. Q. Williams, subject to liens in favor of Pat Arnold and Argonaut Oil Company, which liens were fixed upon the fund paid into court by the garnishee.

Andrews appealed from that judgment upon a cost bond.

On July 5, 1922, a writ of possession was issued in favor of Williams upon said judgment, which was executed the same day by the sheriff placing Williams in possession of the five acres. The appeal of Andrews was sustained, and the judgment reversed on April 26, 1923. 252 S. W. 878.

Upon retrial, judgment was rendered November 8, 1923, in favor of Andrews against the Manhattan Texas Petroleum Company for $4,799, with interest and foreclosure of the attachment lien. Under the foreclosure the lease was sold February 5, 1924, to Pat Arnold for $100, which was credited upon the judgment which Arnold had obtained in the suit. Upon the date of the levy of the attachment the lease was producing oil from wells theretofore drilled thereon, and thereafter continued to produce in the usual and

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

customary manner and in the customary amount, and was continuously operated since the levy of said attachment up to the date of foreclosure; no new wells being drilled thereon subsequent to the date of said levy. During all of the time between the date of the first judgment in said cause No. 6456 and the date of the foreclosure sale under the second judgment in favor of P. W. Andrews the Humble Oil & Refining Company purchased the oil produced from said lease by A. H. Woodfin and his assigns, who were in possession of and operating said lease; the said oil being taken by the Humble Oil & Refining Company from the surface tanks maintained by such parties. Woodfin claimed the lease under a prior foreclosure sale, and upon the appeal in cause No. 6456 it was held he had no title. 252 S. W. 878.

The defendant in error has recovered judgment against the plaintiff in error for the value of the current oil production from the lease produced between the date of the first judgment rendered in cause No. 6456 on November 21, 1921, and the foreclosure sale under the second judgment. The plaintiff in error purchased this oil from R. Q. Williams and his assigns. Williams claims under Woodfin.

It is first contended by the plaintiff in error that the lien of the attachment upon the lease did not attach to the current oil production between the date of the levy and sale from wells upon the premises at the date of the levy.

In support of this position it asserts that an attachment lien is of no higher dignity or rank than a mortgage or other lien, and cites authorities holding that the mortgagor is entitled to the rents and profits to the date of foreclosure; that the purchaser at a mortgage foreclosure is not entitled to the rents and profits accruing before foreclosure or during the pendency of the foreclosure proceedings; that, unless restrained by the terms of the mortgage, the mortgagor in possession may work mines or quarries upon the mortgaged properties, and whatever he severs from the realty becomes unincumbered personalty and his own property; that the holder of a mechanic's lien is not entitled to satisfaction out of the rents and profits (Pratt v. Tudor, 14 Tex. 37); also a case in this state (Crowley v. Adams & Prince, 262 S. W. 883) and cases from other states holding that a mechanic's and laborer's lien upon an oil and gas lease and the oil well located thereon does not cover nor enhance the oil and gas currently produced therefrom. These authorities and the rule which they announce have no present application.

In the first place, the lienors in those cases owned the incumbered property, and were rightfully in possession, whereas in this case the parties from whom the plaintiff in error purchased the oil were not the owners of the lease and wells, nor were they rightfully in possession under the final judgment rendered in cause No. 6456. The Manhattan Texas Petroleum Company owned the same until the foreclosure sale. It is true Woodfin and his assigns were in possession from July 5, 1922, under color of legal process issued upon the first judgment in cause No. 6456, but this judgment was set aside upon appeal.

[1-5] Oil in place is a part of the realty. The lease upon the five acres operated to sever the oil from the balance of the realty. Stephens County v. Mid-Kansas, etc., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 299, 29 A. L. R. 607. The levy of the attachment attached a lien to the oil in place as thus severed. Woodfin and his assigns without right have removed the oil, thereby investing it with the character of personalty. They and plaintiff in error, who purchased the same, thereby became liable as for waste and conversion of the only property which the plaintiff's attachment lien covered. Pittsburg, etc., v. Pentress, 84 W. Va. 449, 100 S. E. 296, 7 A. L. R. 901; Gaskins v. Davis, 115 N. C. 85, 20 S. E. 188, 25 L. R. A. 813, 44 Am. St. Rep. 439. The plaintiff's judgment cannot be collected against the Manhattan Texas Petroleum Company because it is notoriously insolvent. Its security having been converted by the plaintiff in error, it is liable in damages. Hogg v. Magnolia Petroleum Co. (Tex. Com. App.) 267 S. W. 482. The question of good faith upon the part of plaintiff in error is not in the case, because it is shown that it dealt with the oil over the protest of Andrews, and with full knowledge of his claim.

The plaintiff in error also contends that the first judgment in cause No. 6456 operated as a dissolution of the attachment because Andrews was denied any recovery and the lien of the attachment was discharged because the appeal from that judgment was upon a cost bond. It is asserted that it was necessary to the preservation of the lien pending the appeal that a supersedeas bond be given.

[6] There are decisions to this effect, but the weight of authority seems to be that, if a plaintiff against whom judgment has been rendered perfects his appeal in due time, it will preserve the lien of the attachment pending determination of the case on the appeal, and prevent the discharge of the attachment which otherwise would result from a judgment for the defendant. Harrison v. Trader, 29 Ark. 85; King v. Watson, 51 Colo. 293, 117 P. 165, Ann. Cas. 1913B, 178; McDonald v. Bowman, 40 Neb. 269, 58 N. W. 704; Rhodes v. Samuels, 67 Neb. 1, 93 N. W. 148; Henry v. Salisbury, 33 App. Div. 293, 53 N. Y. S. 834; McKean v. National Assoc., 24 Misc. Rep. 511, 53 N. Y. S. 980; Higgins v. Grace, 59 Md. 365; Friede v. Weissenthanner, 27 Misc. Rep. 518, 58 N. Y. S. 336.

In Harrison v. Trader, supra, wherein an appeal was prosecuted by the plaintiff from a

judgment for the defendant, but no supersedeas bond was filed, the court, holding that the lien of the attachment was preserved pending appeal, said:

"The office of a supersedeas is merely to suspend the execution of a judgment. There was no execution to be suspended, except for cost in this case. The law, as it then stood and now is, required a bond only for the purpose of indemnifying the party, whose execution was suspended, for the delay. The plaintiff below was willing to pay the costs, or risk an execution for them, and no other judgment needed a supersedeas. The consequence of the judgment of the court was a dissolution of the attachment; the appeal suspended the judgment as to everything except its execution for money due for costs, and but for the statute which prohibits appeals and writs of error from suspending the execution of judgments unless a bond is given, the effect of appeals and writs of error would be to suspend all action in the court below for all purposes, because the jurisdiction of the cause is no longer there, but is transferred to the appellate court. Our statute extends only to supersedeas of executions, all other features of the court's action are suspended by an appeal or writ of error; and if the cause is reversed, the rights of parties stand as though no action had ever taken place in the inferior court. In this case, what better bonded indemnity did defendants wish than the original attachment bond, which was good until the case was finally disposed of?"

The question, in large measure, depends upon the language of the statutes in the particular jurisdiction. No intervening rights have attached of innocent incumbrancers of purchasers in the present case. Article 270, R. S. 1911, relating to attachments, provides:

"Should the attachment be quashed or otherwise vacated by interlocutory judgment or order of the court, the court shall make the proper order making disposition of the property, or the proceeds of the sale thereof, if the same has been sold under order of the court directing that it be turned over to the defendant. But the property, or the proceeds of the sale thereof, if the same has not been replevied, shall remain in the hands of the officers pending the final disposition of the main case and until it shall be finally disposed of, or until the time for perfecting an appeal has elapsed and no appeal has been perfected, when said order disposing of the property shall be carried into effect; provided, that, pending the final disposition of the main case, the defendant shall have the right at any time to replevy the property in the same manner as is provided for in article 258 of this chapter; or if the property has been sold he may replevy the proceeds of such sale by giving a bond in double the amount of the money arising from such sale, with like conditions as are contained in article 258."

The plain import of this statute is that the attachment lien is preserved pending an appeal until the final disposition of the case without regard to the character of the bond given to perfect such appeal.

The final judgment in cause No. 6456, after making disposition of the moneys paid into the registry of the court by the Humble Oil & Refining Company, then discharged said company.

By its sixth and seventh propositions the plaintiff in error asserts that said judgment is res judicata of the present action. We do not so regard it.

[7] The present action is for damages based upon conversion, and is an entirely different demand from any matter in issue, or which might properly have been litigated, in the former action. Cromwell v. Sac County, 94 U. S. 353, 24 L. Ed. 195; Hanrick v. Gurley, 93 Tex. 458 at 480, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330. Nor is the plea of limitation of two years as to the oil converted prior to December 31, 1923, well taken.

[8] No cause of action for damages is complete, and does not accrue to an attaching creditor against one converting a part of the attached property or depleting the value thereof until a sale of the part remaining has shown that the creditor has not full satisfaction of his judgment. Deaton v. Rush, 113 Tex. 170, 252 S. W. 1025; Paxton v. Meyer, 67 Tex. 96, 2 S. W. 817; Sherwood v. Sherwood (Tex. Civ. App.) 225 S. W. 555.

Finding no error, the judgment is affirmed.