| 13 | 229 |
| 74 | 211 |
| 13 | 229 |
| 82 | 622 |
| 13 | 229 |
| 89 | 248 |

CASTRO v. ILLIES.

A parol agreement that certain real estate shall be substituted in a mortgage for certain other real estate described therein, is void, under the statute of frauds.

The lien of a judgment or decree is fixed by law, and can be extended no further than the limits prescribed by the statute, whether it be attempted so to carry it further by a Court or otherwise. It is erroneous, therefore, to decree that the judgment shall be a lien on the slaves of the defendant, or on real estate in another county.

Error from Bexar. Action by Castro against Illies to have certain conveyances from him, Castro, declared to be mortgages, &c. Illies answered admitting the conveyances were

in fact mortgages, being intended to secure the payment of money; prayed a foreclosure, &c. The facts material to be stated, will be found in the opinion.

*Oldham*, *Howard* and *Harris*, for plaintiff in error.

*I. A. & G. W. Paschal* and *Du Val*, for defendant in error.

LIPSCOMB, J.   We have examined the record with care and attention, and have been unable to perceive any cause to complain of error committed in the Court below, but upon two grounds.

1st. It is assigned for error, that, by the decree in the Court below, other lands were substituted to those conveyed in mortgage, and which could not be reached, by reason of a change of surveys and field notes, upon the parol agreement set up by the amended and supplemental petition of Illies, which was converted into a cross suit.

In order that we may determine whether this objection is well taken, it is first necessary to examine and ascertain what was conveyed, by the two deeds in mortgage to Illies and Wurzbach.

The conveyance to Illies was of forty thousand acres of land, described as, "in the State of Texas and county of Bexar"— "nearest adjacent to the town of Castroville"—"accruing "from the concession granted by the government to said Henry "Castro, being sections surveyed by Charles De Montel, "Deputy Surveyor, &c., as marked and numbered in the map "deposited in the Land Office." Then the description is continued by giving the number of survey of various sections, one three-quarter section, and various half sections and quarter sections. The conveyance to Wurzbach was of twelve thousand five hundred and eighty acres of land, by the description, " All those certain tracts or parcels of land lying "in the district of Bexar, on the map of the lands surveyed by

" Charles De Montel, on the concession to Henry Castro, as "sections," &c., designating several sections, half sections and quarter sections, by the number of survey. Such is the designation and description of the land intended to be conveyed. We suppose, that, when such designation and description were made, by means thereof certain lands described, standing by the designated numbers of surveys, in the names of various individuals, and to which Castro supposed he had a title, and right to convey were sufficiently indicated, so as by proof to make them certain.

In foreclosing the equity of redemption in and to the property included in the mortgage, and in ordering a sale, were the lands mortgaged, and those only, ordered to be sold to satisfy the mortgages, by virtue of the foreclosure?

The decree, so far as it operated on the lands conveyed to Illies, ordered the sale only of the following, to satisfy the mortgage, to-wit: those " known and designated on the dupli- "cate map of Castro's colony, marked T, as survey No. 208, of " one-half section, and being identified as section No. 208, " as originaly mortgaged to said Illies, and chosen by said " Castro, as his premium lands;" also the following surveys being identified as a part of the land originally mortgaged by said Castro to said Illies, and to which he has since received titles, by transfers from the colonists, to-wit: surveys No. 205, &c., being sixteen half sections and four quarter sections, and making together four thousand seven hundred and sixty acres; but other lands were substituted in lieu of those which had been mortgaged, to a large number of acres, and subjected to the payment of the mortgage debt, for two reasons, 1st. Because, the same was within the colony, and claimed or owned by Castro, and 2nd. Because, as to a part thereof, the same was in district No. 1, and was the land " nearest" to the town of Castroville, owned by Castro.

And so in regard to the conveyance to Wurzbach, after describing and subjecting to the mortgage, certain surveys which had been originally mortgaged, the decree then proceeds to

substitute other lands in lieu of those which had been conveyed, for the reason that they were the premium lands of Castro, and "nearest" to the town of Castroville.

The substitution by the decree of other lands, to the lien of the mortgage, in lieu of some of those originally mortgaged, is attempted to be justified, on the ground of contract, for, by the amended and supplemental answer of Illies, which is made a cross petition, it was alleged that in consequence of difficulties in obtaining titles, it was agreed by parol, between the parties, that, new surveys and field notes should be made out; and that a new map and new field notes should be substituted for the old ones, and upon which patents should issue, according to the said new surveys and field notes; and that said Illies should receive the same quantity of land, the amount conveyed by the two deeds from the lands thus patented; and that said surveys and field notes were made, and the lands proposed to be conveyed, designated in blue and red ink on the new map.

Can such an agreement be enforced. It is but the attempt, without writing of any kind, to subject the land referred to to the mortgage, in violation of two inflexible rules, one of the Common and the other of the statute law.

It is a well settled rule that no written agreement can be added to, altered, varied or changed by parol testimony. To this rule certain exceptions were early introduced. One is that you may show by parol that a deed absolute on its face, was given as a security for money, and therefore a mortgage. So in enforcing a vendor's lien, you may show that the purchase money had not been paid, or that the consideration mentioned in the deed is not the true one. The executed agreement in this case between the parties, conveys by a specific description, certain lands in the instrument mentioned. A difficulty occurs as to the title to the property conveyed; and a new agreement is made, not in writing but by parol, by which a large portion of the land described in the conveyance is attempted to be released from the operation of the convey-

ance, and other lands substituted and sought to be subjected in their stead. What is this but an attempt to alter, or to vary, or to change a written instrument by parol? That this cannot be done is as well settled as any doctrine of the Common Law. (4 Phillips on Evidence, 594, and the authorities there referred to; Nelson v. Sharp, 4 Hill, 584.)

The statute on the subject of conveyances declares, "That "no estate of inheritance or freehold, or for a term of more "than five years, in lands and tenements, shall be con- "veyed from one to another, unless the conveyance be declar- "ed by writing, sealed and delivered." (Hart. Dig. Art. 167.)

Certain estate, in conformity to the terms of the statute, had or was intended to have been passed, from the plaintiff in the Court below, Castro, to the defendant, Illies; but by reason of a difficulty about the title to the property conveyed, only a part of the land did in fact pass, or could be reached by the conveyance. The parties, however, being willing that the quantity intended to be conveyed, should pass from one to the other, so as to be reached, agreed that other lands should be substituted to those which could not be subjected. But this agreement was by parol, and by such means it was attempted to be proved that lands had been conveyed from one to another, and that without a writing, sealed and delivered. The conveyances, though in fee and absolute on their face, were in fact mortgages. These mortgages are attempted to be foreclosed; before this, however, could be done, the Court had to see that the lands had by writing, sealed and delivered, passed from one of the parties to the other. This did not take place, because the agreement was only in parol.

The Court below, when decreeing in regard to a part of the land substituted, seem to have been operated upon by some undefined idea, that there might be a difficulty in reaching other lands than those embraced in the conveyances. There is an evident effort to show that a part, at least, of the lands substituted came within the description of the conveyances, and thereby avoid the objection that they were not included

in the said conveyances; for, in the decree, those lands are
described as those nearest to the town of Castroville, this in
substance being a part of the description of the land in the
deed to Illies. But, because such, in part, is the description
of the land conveyed, it does not follow that all lands owned
by Castro, which are nearest to Castroville, can be subjected
to the lien of the mortgage. We understand the rule to be,
as to a deed, that when the description of the thing intended
to be conveyed includes several particulars, all of which are
necessary to ascertain the estate conveyed, no estate will pass
except such as will agree with every particular of the descrip-
tion. (Jackson v. Clarke, 7 Johns. R. 217.) Besides the de-
scription by the expressions " nearest to the town of Castro-
ville," there was a description also by the number of the sur-
vey in District No. 1, made by Charles De Montel, and we
know from the pleadings, and the proof found in the record,
that the numbers of surveys embraced lands which Castro and
others were entitled to; and in the description the numbers of
the survey must have been added to indicate those surveys
nearest to Castroville which it was intended to be conveyed,
and consequently no estate can be said to have been embraced
in the conveyances, which, besides being nearest to Castro-
ville, were not also described by some number of survey set
down in the conveyances.

Castro, in answer to a petition which we find in the record,
filed by Illies against him, says, that at the time that the
Commissioner appointed by " The Act to perfect titles in
Castro's Colony," issued certificates to the colonists, the said
colonists claimed and had the privilege of applying their cer-
tificates to such numbers as they themselves designated,
which, in most cases, were different surveys than those which
had been assigned them; that the boundary of each survey
still remains; and that only the names in the field notes were
altered; which was rendered necessary by the action of the
Commissioner; and that Illies could not be prejudiced, as he,
Castro, is the owner of one-half of each survey described in

the plaintiff's deeds. We have no means of ascertaining whether this allegation is true, there being no statement of facts in the record. But whether true or false, it is the only allusion which we have seen made by Castro, in any part of his pleading, as to a change in the surveys, and which change no doubt led to the agreement, if any such there was, which is attempted to be set up, as to a change of the lands to be subjected to the mortgage. This, however, cannot authorize the substitution made by the decree in the Court below; because, instead of showing that such substitution was necessary, from it, if true, it is manifest that such substitution was not necessary, because the land conveyed could all have been reached by the decree.

We cannot perceive the application of the well known equity doctrine as to resulting trusts in this case. We see no evidence of a resulting trust in favor of Illies. He has not averred, and consequently could not have known, that any land was acquired by Castro with his, Illies, money. If by the use of the term trust, it is intended that Castro became a trustee of the legal estate, if such estate was acquired by him, for Illies, as to such of the surveys in said colony, as by the second survey made by Montel were used to satisfy the claims of the colonists and parties entitled, whose claims were indicated by the numbers of surveys mentioned in the two conveyances, then we admit the trust, and will enforce it whenever it can be reached. If the numbers mentioned in the conveyances to Illies and Wurzbach can be traced, and the right in each individual be elsewhere located, though under a different number, and Castro has title to any portion of such location in law or equity, Illies will be entitled to make the same subject to his mortgage. But we are totally unable to devise any plan by which, under the facts charged, any lands can be reached, besides those mentioned and described in the conveyances respectively, remaining as they were when conveyed, or traced and followed as before contemplated.

There can be no question as to the correctness of the decree

in so far as it orders the sale of the lands mortgaged, and that after said sale, that said Illies have the balance of the judgment, for principal, interest and costs against the other estate of said Castro. But said decree cannot be sustained so far as it subjects lands other than those conveyed to the lien of the mortgage.

2nd. The Court below, in regard to the money decree against Castro, declared that it should be a lien upon all the real estate and slaves of said Castro, in the counties of Medina and Bexar.

We are advised of no law which gives power to the Courts to declare a lien under these circumstances. The lien of a judgment or decree, and its extent and operation, is fixed and ascertained by law, and can in our judgments be extended no further than the limits prescribed by the statute, whether it be attempted so to carry it further by a Court or otherwise. The Court below therefore in this respect also committed an error.

It is therefore ordered, adjudged and decreed, that the judgment and decree of the Court below, so far as it relates to the sum due to Illies, and his costs, be affirmed; and it is further ordered, adjudged and decreed, that so much of the decree of the Court below as decrees the sale of the specific land described in the two deeds of conveyance to Illies and Wurzbach, in satisfaction of the money decreed to be due to Illies, as far as it goes, be affirmed, and it is also affirmed so far as it directs execution in favor of Illies for any balance remaining due to him, after the sale of the land specified in the mortgage deeds.

And it is further ordered, adjudged and decreed, that so much of the decree of the Court below as directs the sale of lands not described in the deeds of mortgage, but substituted in lieu of a part of the lands so described, be and the same is reversed.

And it is further ordered, adjudged and decreed, that so much of the decree of the Court below as directs a lien on other lands belonging to Castro, the plaintiff in error, not in-

cluded in the mortgage deeds, be reversed, annulled and held for naught, and it is further ordered that the appellee recover of the appellant his costs.

Reversed and re-formed.