FIRST NAT. BANK OF ORANGE v. SOKOLSKI et al. .

(Court of Civil Appeals of Texas. Galveston. June 27, 1912. Rehearing Denied Oct. 10, 1912.)

1. HOMESTEAD (§ 18*) — FAMILY — GRAND-MOTHER AND GRANDDAUGHTER—"HEAD OF A FAMILY."

Where defendant, a widow, had cared for her granddaughter for nearly 12 years since the child's birth at her home, and the child's parents were unable to care for her, and had surrendered the child to defendant, for whom she had a peculiar love, she was under a moral obligation to continue to support the child, and hence while so doing and living with the child on the premises in question was the "head of a family," and entitled to hold the premises exempt as a residence homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 22–27; Dec. Dig. § 18.*

For other definitions, see Words and Phrases, vol. 4, pp. 3225–3233; vol. 8, p. 7677.]

2. TRIAL (§ 133*)—ARGUMENT OF COUNSEL.

In an action by a bank, defendant's counsel in argument to the jury used the following language: "I pray you—and just here I beg your pardon for calling your attention that I may pray, and you may pray, but the defendant, which is a corporation, never prays; it cannot p-r-a-y—pray; but it always p-r-e-y-s—preys—upon the rights of the people with whom it comes in contact." Held, that the remark, having been rebuked, was not prejudicial to plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

Appeal from District Court, Orange County; W. B. Powell, Judge.

Action by the First National Bank of Orange against R. Sokolski and others. From so much of a judgment as denied plaintiff's right to enforce execution against defendants" alleged homestead, plaintiff appeals. Affirmed.

See, also, 131 S. W. 818.

Holland & Holland, of Orange, for appellant. O. R. Sholars, of Orange, and Greer & Minor and F. D. Minor, Jr., all of Beaumont, for appellee.

REESE, J. The First National Bank of Orange instituted this action against Mrs. R. Sokolski, widow, to recover the amount due upon certain promissory notes for over $300, and at the same time sued out an attachment which it caused to be levied upon a certain house and lot in the town of Orange. Mrs. Sokolski resisted the attempt to foreclose the attachment on the ground that the property levied upon constituted her homestead. Before the trial A. W. Dycus, trustee in bankruptcy of the defendant, intervened, and claimed the property as part of the estate of the said bankrupt. Upon trial, with the assistance of a jury,. the plaintiff recovered judgment for the amount due upon the notes, to be collected through the bankruptcy proceedings, but the property was adjudged to be the homestead of the defendant, and foreclosure of the lien of the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

attachment was denied. From this part of the judgment the plaintiff prosecutes this appeal.

This is a second appeal of this case. First National Bank of Orange v. R. Sokolski, 131 S. W. 818. Upon the former appeal it was held by this court that the evidence was sufficient to authorize the judgment of the court in favor of the homestead claim of Mrs. Sokolski, but that the pleadings were not sufficient, in this: that while the evidence was sufficient to support the conclusion that Mrs. Sokolski and her granddaughter constituted a family within the meaning of the homestead provision of the Constitution, of which she was the head, in the petition the homestead claim was based upon the existence of a family consisting of Mrs. Sokolski and her children, all grown up and married, and who were not in fact constituents of the family at the time of the levy of the attachment, and no mention was made of the existence of the grandchild as a constituent of the family. Upon the present trial the petition was amended so as to meet the proof, which was substantially the same as upon the former trial, but somewhat more favorable to the claim of appellee.

The questions involved upon this appeal relate solely to the homestead claim. It was agreed "that the only issue in this cause is whether or not at the time of the levy of the writ of attachment the premises in controversy were exempt as the homestead of Mrs. Sokolski, and was so exempt at the time of the trial." The only question presented by the assignments of error, so far as regards the merits, is whether the said Mrs. Sokolski and her granddaughter, living with her, constituted a family, of which she was the head, within the meaning of the homestead provision of the Constitution. Our conclusions of fact will be confined to such as are material to this issue.

[1] The property in question belongs to Mrs. Sokolski, and was at the time of the levy of the attachment and prior to that time and at the time of the trial occupied by her as a home for herself and her granddaughter, Henry Greenwall. She had and has no other home. Mrs. Sokolski is a widow, with several children, all of whom had become of age and none of whom are members of her family at that date, her family consisting of herself and this little granddaughter, who is the child of her daughter, the wife of I. Greenwall. This child was at the date of the levy of the writ of attachment about eight years old, and at the time of the last trial not quite twelve. At the time of the birth of this child her parents were living with appellee, and the child was born in her house. When her parents afterwards left her grandmother's house, this little girl, then an infant, remained with her grandmother. The child has lived all her life with her grandmother, and has never known any other home. Her only absences have been for a few short visits to her parents. Appellee has had since the birth of this grandchild the entire and sole care and support of her. Her parents have contributed nothing to her support, but she has been entirely dependent upon her grandmother, who has assumed the entire responsibility for her nurture, support, moral training, and education since her birth, exactly as though she were her own child. Mr. and Mrs. Greenwall have two other children, both younger than Henry. They are and have been since the birth of Henry in poor circumstances, and have had to be assisted by Mrs. Greenwall's mother, the appellee. Mr. Greenwall has no property, and no home. He is in poor health, is dissipated, gambles, and is generally not of exemplary habits. Mrs. Greenwall's health is not good. She has been many times in the hospital, and she testified that she had Bright's disease. The testimony justifies the conclusion that the Greenwalls have a hard time to keep the wolf from the door, and have had to be considerably assisted in this by appellee, and, while they have been able to support themselves and the other two children with what assistance appellee has given them, the additional expenses of the support and education of this other daughter, now 12 years old, they would not be able properly to meet. At the time this grandchild became an inmate of her grandmother's family as a member thereof, which was in fact at her birth, appellee had other minor children constituents of the family, and there is nothing to suggest that her undertaking the care, nurture, and support of this grandchild was with any improper or fraudulent motive of protecting her homestead claim. She has the sincerest love and affection for this grandchild. She testified that she would not be willing to assume or undertake the care and support of either of the other grandchildren, but on account of her peculiar love for this grandchild, who had always lived with and been cared for by her, she kept her, cared for her, and supported her. The child was given to her grandmother by her parents when she was an infant. They went off and left her with her grandmother when she was a few months old. They have since then been living in different places, always assisted by appellee financially, and never able to support themselves and the other two children properly. Since her infancy this child, Henry, has been left entirely to the care of her grandmother. The undisputed evidence shows that her parents are not and have never been able properly to support and care for this child, who has been dependent upon her grandmother for everything. There was very little conflict in the evidence, which under the verdict of the jury fully authorizes the foregoing conclusions.

Under the first, third, fifth, sixth, eighth, and sixteenth assignments of error, which are presented together, appellant states the

following proposition: "Under the facts of this case as developed by the testimony, the property in controversy was not exempt to appellee as the head of a family consisting of herself and her minor grandchild, Henry Greenwall." The testimony on the former trial was substantially the same as upon the trial from which this appeal is prosecuted, except that upon the present trial the straitened circumstances of the grandchild's parents, and their inability properly to support, care for, and educate her, are more fully shown. We held upon the former appeal that the facts supported Mrs. Sokolski's contention that the property was her homestead and not subject to the attachment lien. First National Bank of Orange v. Sokolski, 131 S. W. 818. It is settled by all the authorities that, in order to constitute a family within the meaning of the homestead law, it is not necessary that there be a legal obligation on the part of the person claiming to be the head of such family to support, or furnish a home for, the other members. It is enough that there be a moral obligation to do so. Roco v. Green, 50 Tex. 483; Fant v. Gist, 36 S. C. 576, 15 S. E. 721; Blackwell v. Broughton, 56 Ga. 390. This is not disputed by appellant, but it is insisted that this moral obligation does not arise unless there is a condition of dependence of the member or members constituting the family upon the head for such support, and that this condition does not exist in the present case, for the reason that the parents of the grandchild, who are under the legal obligation to support her, are shown to be able to do so. We cannot agree that the moral obligation can be thus restricted, even if appellant's contention be correct as to the ability of the parents of this child to support and care for her. In view, however, of the evidence as to their straitened circumstances which makes it clear that they are not financially able properly to care for this child and to raise and educate her, in addition to the burden of their own support and that of the other two children, and the fact that the child has, from her birth, been taught to look to her grandmother, not only for the material things which are necessary for her physical existence, but for the affection and the nurturing care so necessary to her proper upbringing, we do not see how a doubt can arise that the moral obligation rests upon appellee to continue to support and care for this child so long as she is able, and the child is dependent. It would be the harshest cruelty on her part now, after having for all these years fostered and encouraged in the mind of this young child this feeling of dependence, to say nothing of the feeling of affection, to abandon her even to her parents. To say this is to say that she would violate the most sacred moral obligation if she were to do so. This is all that is necessary to the existence of the relation which constitutes a family for whose benefit the homestead is protected under the provisions of the Constitution and laws. Clark v. Goins, 23 S. W. 703; Wolfe v. Buckley, 52 Tex. 649; Bank v. Cruger, 31 Tex. Civ. App. 17, 71 S. W. 784; Adams v. Clark, 48 Fla. 205, 37 South. 734; Cross v. Benson, 68 Kan. 495, 75 Pac. 558, 64 L. R. A. 560. We cannot share the apprehension of appellant that such a rule would allow a dependent child to be divided up so as to afford a pretext for the homestead claim of several relatives, each of whom might for this purpose be willing to assume this moral obligation for the support of the child. It would not be practically possible for a dependent child to be so used. The danger is, we think, entirely imaginary. We conclude that the proposition stated by appellant is not tenable, and the assignments referred to must be overruled.

There is no merit in the second assignment of error. What was alleged in the petition with regard to the purchase of the property and the former use of it as a homestead by appellee and her minor children before they ceased to be constituent members of the family within the meaning of the homestead laws was merely by way of inducement. The allegations were not improper as they served to rebut any imputation of fraud on the part of appellee by showing that, at the time she took this grandchild to support as a member of her family, there was no necessity for her to do so in order to protect the property as her homestead. In the preliminary statement of the law in the charge, the court stated that there were exempt to each head of a family a residence homestead and a business homestead. The homestead in the present case was claimed as a residence homestead. No further reference in the charge was made to business homestead. By the seventh assignment of error appellant complains of this reference in the charge to business homestead as prejudicial error. There is no merit in the complaint and the assignment is overruled.

[2] Counsel for appellee, in addressing the jury, used the following language: "Gentlemen of the jury, when you go to make up your verdict I pray you—and just here I beg your pardon for calling your attention that I may pray, and you may pray, but the defendant, which is a corporation, never prays; it cannot p–r–a–y—pray; but it always p–r–e–y–s—preys—upon the rights of the people with whom it comes in contact." And, upon being rebuked and warned by the court, said further: "You can't deny that you are a corporation, that you represent a corporation, that the plaintiff is the First National Bank, the First National Bank of Orange, Texas, a corporation. Now, do you object to that kind of argument?" It does not appear from the brief that the latter remark was objected to, but the first statement,

was, whereupon the court stated to the jury that the language was improper, and that they should not consider the same, and admonished counsel to stay within the record and abstain from the use of such argument. The court, further, in its charge, expressly instructed the jury to disregard this remark of counsel. It should be needless for us to say that this language was clearly improper. There was absolutely nothing to call for or justify it. The record of the entire case shows that appellant denied that the property under the facts existing was the homestead of appellee and sought in a proper legal way to subject it to the payment of her just and legal debts to it. If it was mistaken in this, its conduct is not subject to criticism, so far as the record discloses. But what we are to deal with is the question of whether this undeniably improper remark in the course of the argument influenced the jury, and probably caused them to render a verdict which they would not otherwise have rendered. That the remark was improper must be admitted, that it was probably intended to influence the jury appellant is justified in charging, but we cannot bring ourselves to the conclusion that it could have had this effect upon the jury, even without the counteracting influence of what was said by the court. We think better of the jury, of any jury. The evidence was abundantly sufficient to authorize the verdict. Indeed. it is hardly going too far to say that it would not have justified any other. In such case, we would not be justified in setting the verdict aside and granting a new trial on this account. The remarks of counsel for appellee set out in the fourteenth assignment of error appear to us entirely harmless, and the assignment is overruled.

We find no error in the record, and the judgment is affirmed.

Affirmed.