TUNNELL et al. v. JOHNSON.  (No. 1488.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 26, 1919.)

1. HOMESTEAD ☞214 — HEAD OF FAMILY — EVIDENCE.

Evidence *held* sufficient to sustain finding that judgment debtor with two granddaughters constituted a family within meaning of Constitution, although parents of granddaughters were living.

2. JUDGMENT ☞777—LIENS—VENDOR'S LIEN NOTES.

A judgment creditor has no lien upon vendor's lien notes held by judgment debtor from sale of land after rendition of judgment, and cannot invoke equitable powers of court and through instrumentality of an injunction and receivership subject them to payment of judgment.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by Mrs. L. Johnson against Mrs. Sarah Tunnell and others. Judgment for plaintiff, and the defendants appeal. Affirmed.

W. D. Cardwell and McCutcheon & Church, all of Dallas, for appellants.

J. D. Fouraker and Claude M. McCallum, both of Dallas, for appellee.

HALL, J. Appellee, Mrs. Johnson, filed her petition seeking to enjoin appellant Mrs. Tunnell and George Patterson, constable of Dallas county, from selling lots 8 and 9, in block 12, of Oak Cliff Annex, under an execution issued out of the county court at law of Dallas county, upon a judgment previously rendered in favor of appellants against appellee. The injunction was sought upon the ground that the property levied upon was appellee's homestead. A temporary writ was granted, which upon final hearing was perpetuated. Appellee was the only witness who testified. In the course of her testimony it was shown that at the time of the trial she owned and was in possession of two notes secured by vendor's lien on a vacant lot which she had previously sold to a third party, and since the judgment was rendered against her in favor of appellant. By leave of the court, counsel for appellant was permitted to file a trial amendment, praying that, in the event the property levied upon should be adjudged to be the homestead of appellee and exempt from forced sale, than that the court make an order appointing a receiver to take charge of said vendor's lien notes, collect the same, and under the order of the court apply the proceeds to the satisfaction of the judgment. The court declined to enter any such order, and from this judgment, which also decreed that the injunction be perpetuated, the appeal is perfected. The material portion of Mrs. Johnson's testimony is as follows:

"I live at No. 336 King's Highway, Oak Cliff; have been living there three years. My two granddaughters, 15 and 17 years of age, respectively, are living with me. They have been living with me three years. I have three lots, viz., lots 7, 8, and 9, in block 12. My house and garage is on lot 7. We use the other two for a garden. I bought lots 8 and 9 March 6, 1911, from the Interstate Suburban Realty Corporation, and lot 7, July 30, 1914, from Mrs. Norwood, and moved on this lot the following October. I have been living there ever since. Have had a nice garden on the rear end of lots 8 and 9 ever since I have been there and have one this year. There is a lawn tennis court on the front end of the lots, and the garden is on the back part. I have always used them, and am using them now. When I purchased lots 8 and 9, I had plans made to build on them. These are the plans I had made for the house. At the time I bought them I had a widowed daughter, Mrs. Smith, with one child, living with me. I got possession of my two granddaughters in 1913. My son, their father, had shot himself through the leg and was an invalid for a long time, and he gave me the two girls. I was running a boarding house at 605 Masten street. He gave the two girls to me and said possibly he could take care of the other three children. The girls have been with me ever since 1913, and I have maintained, supported, and taken care of them so far. Their father and mother have not contributed anything to their support. I have kept them going to school, and they are in school now. This property is my means of support. We have some boarders. At the time I moved into the house on lot 7, Mrs. Tunnell's suit was not filed. The tennis court was there then. In the spring of 1915 I planted a garden on the rear of the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

two lots. I had not built a fence around them. More than half of the two lots is used for a garden. The lot upon which my residence stands has a fence around it. My children are all grown and married, and were when I moved into the house. My son never lived in Texas; he lives in Mississippi. I have never taken any steps to adopt the two granddaughters legally. I merely have my son's word for it that I could have the children. I sold the lot across the street after Mrs. Tunnell had secured the judgment against me in the county court, and have the purchaser's two notes, aggregating $750, now in my possession. The notes are a lien upon the lot across the street. My granddaughters' parents have never taken them away from me since they came here."

[1] It is said in the case of First National Bank of Orange v. Sokolski, 150 S. W. 313, that—

"It is settled by all authorities that, in order to constitute a family within the meaning of the homestead law, it is not necessary that there be a legal obligation on the part of the person claiming to be the head of such family to support, or furnish a home for, the other members. It is enough that there be a moral obligation to do so."

It is true, as contended by appellant, that the proof of the moral obligation resting upon appellee in the instant case is not as strong as that resting upon the grandmother in the Sokolski Case. While it was shown that the father had accidently shot himself and was an invalid for several years, it does not appear that he was utterly worthless and incapacitated to take care of his children, or that his wife was unable to do so; but the trial court was authorized to infer that the care and custody of the two girls was intrusted to the grandmother because their father and mother were not able to properly care for them together with their three remaining children. We believe the evidence, taken as a whole, brings this case fairly within the rule announced in the Sokolski Case, and is sufficient to sustain the court's findings that the grandmother with the two granddaughters constituted a family within the meaning of the Constitution. The case of Phillips et al. v. Price et al., 12 Tex. Civ. App. 408, 34 S. W. 784, is one in which a granddaughter, with her parents' consent, had lived with her grandmother, by whom she was supported until the grandmother's death. After the death of the grandmother, the granddaughter endeavored to claim the homestead as a member of the family. Williams, Justice, said:

"In a number of cases in which the question as to the exemption from forced sale of the homestead during the life of the owner was involved, courts have held that others than children of the owner might constitute a 'family,' within the sense of the Constitution and laws extending such exemption. Wolfe v.

Buckley, 52 Tex. 641; Whitehead v. Nickelson, 48 Tex. 530; Ramey v. Allison, 64 Tex. 700. Other cases might be cited in which the doctrine last stated has been fully recognized. It does not follow that after the death of the owner, to whom the exemption during his life was thus secured, any person whose presence in his household has helped to constitute a family and to give rise to the exemption can hold the property against his creditors."

The effect, therefore, of the presence of the two girls in the home of their grandmother, is to constitute such a family as to bring it within the exemption and that the exemption exists for her benefit. A writ of error was refused in the Sokolski Case by the Supreme Court, and upon that case as authority we sustain the holding of the trial judge.

[2] In subsequent assignments it is contended that the court erred in not appointing a receiver for the two vendor's lien notes held by appellee and ordering them collected by the receiver for the purpose of satisfying the judgment. Appellant had acquired no lien whatever upon the notes and is in no position to invoke the equitable powers of a court and through the instrumentality of an injunction and a receivership subject such property to the payment of her judgment. Carter Bros. v. Hightower, 79 Tex. 135, 15 S. W. 223; Gulf National Bank v. Bass, 177 S. W. 1021.

There is no error in the judgment, and it is affirmed.

---

⬦⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes