## THLOCCO et al. v. MAGNOLIA PETROLEUM CO.

### No. 10775.

Circuit Court of Appeals, Fifth Circuit.

April 12, 1944.

Rehearing and Motion to Amend or Supplement Opinion Denied May 23, 1944.

Orel Busby, of Ada, Okl., and J. W. Gormley, of Dallas, Tex., for appellants.

Earl A. Brown, Walace Hawkins, and Chas. B. Wallace, all of Dallas, Tex., and Hugh Carney and Howard A. Carney, both of Atlanta, Tex., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and BORAH, District Judge.

HUTCHESON, Circuit Judge.

Brought by Magnolia Petroleum Company, claiming to be the owner of record and by limitation,[1] this suit was to remove the cloud of defendant Amey Thlocco's claim from, and to quiet title to, an oil and gas lease on 130¾ acres of land in Titus County, Texas. Voluminous testimony was taken, the record running to more than 800

---

[1] As the cause stood for trial, plaintiff alleged: that though defendant, Amey Thlocco, had been adjudged by the County Court of Seminole County, Oklahoma, under a statute authorizing such adjudication, to be an incompetent person to the extent that she cannot properly handle her business affairs, she was not an insane person or a person of unsound mind; that the defendant Kenneth Mainard, had originally been appointed her guardian, that he had now resigned and Loren Ray had been appointed to succeed him; that the lease in question was executed Feb. 14, 1936, by Kenneth Mainard, Trustee, to Bat Shunatona, and recorded Feb. 29, 1936, in the Deed Records of Titus County; that plaintiff had acquired the lease from Shunatona, by written assignment dated Feb. 20, 1936, recorded on March 5, 1936, in said deed records; that at the time of the execu-

pages, but no claim was made and no testimony given that the plaintiff in taking the lease and in developing and operating under it had been guilty of fraud or over-reaching.[2]

Defendant's whole case against plaintiff's showing of record title by deed from Mainard, trustee, and of limitation title by adverse possession was (1) that the property was restricted property of an Indian, and under the federal statutes[3] for the protection of Indians as to such property, no title could be acquired to it by limitation and none by purchase except in accordance with the statutes governing restricted property; and (2) if it was not restricted, the defendant had been declared an incompetent under Oklahoma laws and placed under guardianship, and because of this, her title could be divested neither by limitation nor by the deed of her trustee unless it was authorized under and in conformity with Oklahoma law governing the sale of property of an incompetent under guardianship.

The District Judge, on evidence fully supporting his findings, found in plaintiff's favor every fact it had pleaded and relied on to support its claim for judgment.[4] Based upon these findings, he concluded

tion and recording of both of said instruments, the said Kenneth Mainard, Trustee, was the owner of the legal and record title to said lands, and plaintiff by its purchase of the lease acquired title to the property. That on about Sept. 1, 1936, plaintiff entered into actual possession of the lands for the production of oil under title from the State of Texas, and it has from that date until April 24, 1942, the date of the filing of this action, had peaceable, continuous, adverse possession of said lands, claiming the same under deed duly registered, using and enjoying the same by producing oil and gas therefrom, and paying all taxes thereon; that during that time plaintiff has drilled a large number of wells on said land, and produced large quantities of oil and gas therefrom; that defendant, Amey Thlocco, is claiming to own the land and claiming that plaintiff's oil and gas lease is invalid.

Defendant, Amey Thlocco, answered: admitting that she had been adjudged an incompetent and that she was claiming to be the owner of the lands described in the petition; and alleging that she was the real and beneficial owner of the lands which stood in Kenneth Mainard's name as trustee; that the oil and gas lease to Shunatona, executed by Mainard, was not executed by lawful authority; and that plaintiff, in taking the lease, knew of her ownership, or knew, or was acquainted with facts that put it on knowledge, that she was incompetent, that Mainard was her guardian, and that he was without authority to execute a lease as trustee, and that it, therefore, acquired nothing by its purchase of the lease. She prayed that the action be dismissed for want of jurisdiction over her, or, in the alternative, if it be not dismissed, that she have a cancellation of the oil and gas lease and an accounting as to, and recovery of, all proceeds resulting from the drilling of the wells less the actual cost of said drilling and operations.

In reply, Magnolia Petroleum Co. filed a general denial, and pleaded, to the claim to cancel and for an accounting, the statutes of limitation of four and two years, and to the claim of title, that it had had peaceable, continuous and adverse possession under title from the State and under deed duly recorded, with payment of taxes, and therefore had title of limitation under the three and five year statutes of limitation of the State of Texas. In addition, it pleaded that Amey Thlocco for a period of more than five years, with knowledge that plaintiff was operating the property under lease and was spending thousands of dollars in operating it, had taken no action to disaffirm it but on the contrary had accepted royalties thereunder, and was now estopped to claim that the lease was invalid. Her acceptance and receipt of royalties, her other acts and conduct and especially the suit and judgment in Amey Thlocco v. Mainard, wherein plaintiff allowed a judgment to go in favor of royalty owner owning one-half of the royalty under said lease were also pleaded as a ratification and acceptance of the lease.

[2] The 8th finding of the District Judge was: "No fraud has been pleaded or charged against the plaintiff, Magnolia Petroleum Co., and none has been proved", and the record fully supports this finding.

[3] Act of May 27, 1908, 35 Stat. 315, as amended by Act of May 10, 1928, 45 Stat. 495; Act of March 2, 1931, 46 Stat. 1471, as amended by Act of June 30, 1932, 47 Stat. 474, 25 U.S.C.A. § 409a; Act of Jan. 27, 1933, 47 Stat. 777; Act of May 19, 1937, 50 Stat. 188, 25 U.S. C.A. § 412a. Cf. Murray v. Ned, 10 Cir., 135 F.2d 407; United States v. Williams, 10 Cir., 139 F.2d 83; Ward v. United States, 10 Cir., 139 F.2d 79.

[4] Included in the findings were one find-

in effect (1) that within the provisions of Art. 7425a et seq. of the Vernon's Annotated Revised Statutes of Texas,[5] Kenneth Mainard held title by "a trust" "created"· by "but not contained or declared in the conveyance to the trustee" by "a conveyance or transfer made to a trustee without disclosing the name of the beneficiary or beneficiaries"; (2) that under that statute as construed in Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W. 2d 553, 164 S.W.2d 488, Mainard, as trustee, had "the power to convey, transfer, or encumber" it, and that his "conveyance or transfer" is not subject "to question by anyone claiming as a beneficiary under the trust"; (3) that plaintiff, in good faith and for value, having purchased and paid the consideration for the lease in reliance on Mainard's power and right to sell it, with no notice or knowledge that he did not have that power and right, the right or title it derived for such consideration in reliance upon the trustee's conveyance cannot "be impeached or called in question in consequence of a misapplication", if any, "by the trustee of the money so paid"; and (4) that the property was not restricted in any way, but that if it was, this would not prevent plaintiff's acquiring good title by the purchase in reliance on the statute, nor prevent a title by limita--

ing the issue generally in favor of plaintiff, and specific findings in effect (1) that plaintiff was a good faith purchaser; (2) that the conveyance by the Fidelity Union Ins. Co. of its own property to Mainard, Trustee, was not of restricted property of an Indian, nor was it before or after the conveyance in anywise subject to federal restrictions imposed upon such property; (3) that the conveyance to Mainard, Trustee, was not in breach of, but in accordance with, the agreement and understanding of all persons concerned in effecting the conveyance, the purpose and effect being to create a trust in Kenneth Mainard, Trustee, without naming a beneficiary, in order that, the land being in Texas, he could more advantageously deal with it if it was conveyed to him simply as trustee; (4) that the defendant was not a person of unsound mind, and was not under the disability provided by Art. 5518, R.C.S. of Texas, but that she is and at all times has been a person of sound mind and that the statutes of limitations of Texas have run against her. He found also (5) that the property had been fully and adequately developed, that the company had for years paid to Mainard as trustee for, and Amey Thlocco, the defendant, had received and accepted royalties in large sums; (6) that she knew that the lease had been made to Shunatona, that plaintiff had bought it and was operating the property, and that she had never at any time objected to it, nor, until in the suit, complained of it; and that she had both by her acts and conduct and by a suit in which she had confirmed the title of Terry et al., who had ·bought a one-half interest in the minerals subject to the lease, fully ratified and confirmed, and was estopped to contest, plaintiff's ownership.

[5] "An Act for the Protection of Those Dealing With Trustees". "Be it enacted by the Legislature of the State of Texas:

"Section 1. Where a trust is created, but is not contained or declared in the conveyance to the trustee, or when a conveyance or transfer is made to a trustee without disclosing the names of the beneficiary, or beneficiaries, the trustee shall be held to have the power to convey or transfer or encumber the title and whenever he shall execute and deliver a conveyance or transfer or encumbrance of such property, as trustee, such conveyance or transfer or encumbrance shall not thereafter be questioned by any one claiming as a beneficiary under such trust or by anyone claiming by, through, or under an undisclosed beneficiary, provided that none of the trust property in the hands of said trustee shall be liable for personal obligations of said trustee.

"Sec. 2. Whenever one shall actually and in good faith pay a sum of money to a trustee, which the trustee is authorized to receive, he shall not be responsible for the proper application of the money, according to the trust; and any right or title derived from the trustee in consideration of such payment.shall not be impeached or called in question in consequence of a misapplication by the trustee of the money so paid.

"Sec. 3. The fact that there is no statutory law of the State of Texas safeguarding the interest of those who deal with trustees, and the further fact that there is a question as to whether beneficiaries under trusts may hold those who purchase from trustees, responsible for the application of money paid to trustees, creates an emergency, and an imperative public necessity which requires that the ·constitutional rule providing that bills be read on three separate days in each House be suspended, and the said rule is hereby suspended and this Act shall take effect and be in force from and after its passage, and it is so enacted."·

Approved March 28, 1925. Acts Tex. 1925, c. 120.

tion ripening in the plaintiff under the facts of adverse possession in this case, and that plaintiff had acquired full title by limitation.

Appellant is here urging upon us that the judgment may not stand. Confronted with the court's finding that plaintiff was a bona fide purchaser of the lease and its conclusion that under the Texas Statute, Art. 7425a, as construed in Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, 164 S.W.2d 488, it took good title unimpeachable by defendant, appellant argues (1) that the finding of innocent purchase is not supported by the evidence and is contradictory of the special finding the court made that Mainard, the trustee, after making the lease to Shunatona had himself conducted the negotiations for its sale to plaintiff, and (2) that if it is supported, this would not avail plaintiff for the statute in terms and by construction applies only to express trusts and the trust here was not an express but a resulting trust. Confronted with the further finding on undisputed evidence that plaintiff has had open, notorious, hostile and adverse possession under a deed duly recorded, paying all taxes as they accrued, for more than five years, and therefore has acquired title by limitation, the appellant lamely urges upon us (1) that her adjudication as an incompetent has prevented the Texas statute from running and (2) that the property is restricted Indian property, and though it is Texas land and subject to Texas laws, the restriction removes it from the operation of the Texas statutes of limitation. Confronted with the finding that she was not of unsound, but of sound, mind, that she knew that plaintiff had a lease on the property and that, so understanding, she had received royalties from the lease and had acted so as to ratify it and to estop herself from objecting to it, she insists that the property was restricted and she was an incompetent and therefore she could not do by ratification or assent what she could not have done directly without compliance with the formalities the Oklahoma statutes required.

■ Taking these points up in order, we think it clear that the finding that plaintiff was an innnocent purchaser is fully sustained by the evidence and that there is nothing in the finding that Mainard conducted the negotiations for the sale of the lease which is in any manner in conflict with this view. The statute governing dealings with trustees expressly provides that persons may deal with a trustee of this sort without inquiry as to the beneficiaries and without concern or responsibility as to the application of the proceeds. If this statute applied, plaintiff was entitled to deal with the trustee here in respect of the sale of the lease, whether he purported to be acting for himself or for Shunatona, his lessee, in full reliance upon his power to act, and with complete freedom of accountability to the beneficiary.

■ Upon the issue of whether the statute applied, we need not canvass the authorities appellant cites, or determine whether the limitation she seeks to put upon the statute is in fact contained in it. It is sufficient to say that under the findings of the court and under the facts as the record presents them, it is quite clear that the trust in question here was neither resulting nor constructive, but an express trust created for the purpose of enabling Mainard, as trustee, to deal freely with the Texas lands, and that in terms and in fact it is directly within both the purpose, and the language of the statute.

■ Of appellants' contention that the land is restricted and because restricted, neither the invoked Texas statute as to dealing with trustees, nor the statutes of limitation, can affect the title to it, it is sufficient to say that the District Judge, on facts fully supporting his finding, found that the land in question was not and never had been restricted land. But if we should assume that the land was restricted, nothing in the federal statutes nor in the decisions construing them gives warrant for appellant's claim that they operate to remove land in Texas from the operation of Texas laws, and particularly nothing in them operates as a barrier to the running of the Texas Statutes of Limitation.

■■ As to her claim that because she had been adjudged incompetent, the statutes of limitation may not run against her, it is sufficient to say that the disability which prevents the Texas statutes from running is not an adjudication of incompetency, but the disability of an unsound mind, and that not only did the District Judge find as a fact that defendant was not of unsound but of sound mind, but it is not even contended that her adjudication as an incompetent is an adjudication that she was of unsound mind. Section 16, Title 15, Oklahoma Statutes 1941, provides:

"Persons of unsound mind within the meaning of this chapter are idiots, lunatics, and imbeciles".

In Oklahoma Natural Gas Corp. v. Lay, 175 Okl. 75, 51 P.2d 580, 582, it is said: "'Unsoundness of mind' has been judicially declared to be synonymous with 'insanity'", while in In re Nitey's Estate, 175 Okl. 389, 53 P.2d 215, it was determined that an adjudication of incompetency is not an adjudication of unsound mind. Cf. Shelby v. Farve, 33 Okl. 651, 126 P. 764.

Her final contention that because she had been adjudged incompetent, her acts and conduct could not effect a ratification of the lease or raise an estoppel against her, we need not discuss or consider, for we think it plain that whether this contention be sound or unsound, it is quite clear that the judgment must be affirmed on the showing and findings made of record and limitation title in plaintiff. The judgment was right, it is affirmed.