Frances DONLEY et al., Appellants,

v.

YOUNGSTOWN SHEET AND TUBE
COMPANY et al., Appellees.

No. 3445.

Court of Civil Appeals of Texas.

Eastland.

June 12, 1959.

Rehearing Denied Oct. 16, 1959.

Simon & Simon, Fort Worth, Smith &
Pope, Abilene, for appellants.

W. Edward Lee, Midland, Ben Goodwin,
Bill Lambert, Tyler, for appellees.

GRISSOM, Chief Justice.

Prior to June 6, 1951, C. C. Allmand and
wife owned the royalty in controversy. On
that day they executed an oil lease to Sohio
Petroleum Company reserving a ⅛th roy-
alty. On the same day they conveyed to

E. H. R. Sabens, individually, an undivided ¼th of said reserved ⅛th royalty for fifteen years. Sabens and W. Edward Lee each paid for and owned a one-half of said one-fourth of a one-eighth term royalty, which shall, for convenience, hereafter be referred to as a ¼th royalty. Thereafter Sabens conveyed to Lee and his nominees Lee's ½ interest. The last such conveyance was on August 2, 1951, when Sabens conveyed to W. Edward Lee and his daughter 3/128ths of said royalty, being the remaining interest owned by Lee. Sabens then still owned 11/128ths of said royalty. He owed Lee part of the purchase price for Lee's interest which had been sold by Sabens to Greenberg and Parris and, on September 7, 1951, Sabens, trustee, conveyed his remaining 11/128ths to Lee to secure its payment. Sabens paid Lee and, at Sabens' request, Lee conveyed Sabens' 11/128ths royalty to Murph Wilson, Sabens' attorney, by deed dated October 8, 1951. On October 16, 1951, Murph Wilson conveyed to O. D. Harrison 1/32nds of said royalty and on October 20, 1951, he conveyed 1/32nds thereof to Oscar Donley. On November 9, 1951, Sabens, trustee, conveyed 1/160ths of said royalty to Cecil Warren and on January 28, 1952, Sabens, trustee, conveyed another 1/160ths to Warren.

An abstract of a judgment against E. H. R. Sabens, individually, now owned by Youngstown Sheet and Tube Company, was filed for record in Taylor County on May 19, 1951. An abstract of a judgment against Sabens, individually, now owned by Claude S. Holly, was filed for record in Taylor County on July 13, 1951. Said judgments were duly abstracted, indexed and recorded and constituted liens against any real estate owned by E. H. R. Sabens in Taylor County. Some of the facts just stated were disputed but were so found by the trial court and are approved. The trial court further found that in his contracts with the Allmands and Lee, Sabens acted as an individual and that one-half of the royalty conveyed by the Allmands in June,

1951, belonged to Sabens individually and that when the royalty deed was delivered to Sabens it was delivered to him as an individual. When the deed was recorded it showed the grantee to be "E. H. R. Sabens, Trustee". The conveyances to appellants, or their grantors, were by "Sabens, Trustee". The evidence justifies the court's evident conclusion that the word trustee after the name of the grantee Sabens in said royalty deed was inserted by Sabens after the deed was delivered to him. We approve said finding. The trial court held that Youngstown's and Kelly's judgments were secured by liens on Sabens' interest in the royalty in place. This is correct. But, the court further held that the liens followed the oil when produced and covered the money paid into the registry of the court by the lessee, Sohio, which was an amount equal to the value of the oil produced attributable to appellants' interest in the royalty. Said money was paid to said judgment creditors in the discharge of their debts, liens and fees. Judgment was rendered in favor of Youngstown and Kelly against Mrs. Frances Donley, individually and as independent executrix of Oscar Donley's estate, C. D. Harrison and Cecil Warren whereby their judgment liens were established and foreclosed against said funds paid into court by Sohio. Mrs. Donley, individually and as executrix, Harrison and Warren have appealed. Appellants question the holding that said abstracts of judgments created liens against the Donley, Warren and Harrison royalty purchased from the trustee and his vendors and extended to and covered the money paid into court by Sohio. The court held that said abstracts of judgments against Sabens, individually, created liens against Sabens' interest in the royalty standing in Sabens' name as trustee and covered the proceeds of the sale of oil attributable to the royalty interests of appellants and, in effect, that the record of said deed to Sabens, trustee, constituted constructive notice to appellants of Sabens' ownership as an individual. Appellants' points are in substance that the

court erred in holding that said abstracts of judgments against Sabens as an individual created liens against the royalty acquired by appellants from Sabens, trustee, and his vendors because there was no evidence that appellants had actual notice of Sabens' individual ownership and that the court erred in holding that the filing of the abstracts against Sabens created liens on the interest acquired by appellants from Sabens, trustee, because Sabens' title, if any, was equitable, of which appellants had no knowledge, and such abstracts could not create liens on an equitable interest owned by the judgment debtors in lands the legal title to which was held by a separate juristic person, namely, Sabens, trustee. Their fourth and fifth points are to the effect that if said abstracts of judgments constituted liens on appellants' royalty it did not attach to the funds paid into court by Sohio and the court erred in holding that said judgment creditors were entitled to said funds and, also, that appellees did not establish a conversion of the corpus upon which they claim liens, nor that their security had been impaired and, therefore, the court erred in ordering the money deposited in court paid to appellees instead of appellants.

▮▮▮ The evidence sustains the finding that one-half of said one-fourth royalty was owned by Sabens and one-half was held by him in trust for Lee. There is no contention here that Lee's interest is subject to said liens. The court correctly found that the filing of the abstracts fixed liens against the royalty interest actually owned by Sabens individually. The following authorities sustain that holding. In Texas, where royalty is real estate, the filing of an abstract of judgment fixes a lien against royalty. 49 C.J.S. Judgments § 482, p. 922. A judgment lien attaches to such realty but not to rents, issues and profits therefrom. 49 C.J.S. Judgments § 472, pp. 906, 907; Vernon's Ann.Civ.St. Article 5449. The fact that Sabens' individual interest in royalty was not of record did not defeat the judgment liens against whatever interest he

actually owned, except as against innocent purchasers. 26 Tex.Jur. 380; Traders' Nat. Bank v. Price, Tex.Com.App., 228 S. W. 160; First State Bank of Amarillo v. Jones, 107 Tex. 623, 183 S.W. 874; Blankenship v. Douglas, 26 Tex. 225, 229; Payne v. Bracken, 131 Tex. 394, 115 S.W.2d 903, 905; Calvert v. Roche, 59 Tex. 463; Tex. Dig., Judgment ⊕⇒775–780; Parks v. West, Tex.Civ.App., 274 S.W. 164, 165; Steele v. Harris, Tex.Civ.App., 2 S.W.2d 537. In Brown v. Hodgman, 124 W.Va. 136, 19 S.E. 2d 910, it was expressly held by the Supreme Court of Appeals of West Virginia that where a judgment debtor held record title as a trustee, a judgment against him as an individual attached to whatever interest he actually owned in realty.

Unless appellants had notice, actual or constructive, of Sabens' individual interest, they took the royalty purchased by them from the trustee free of said liens.

In Parker v. Coop, 60 Tex. 111, the court said:

"These cases all proceed upon the theory that the purchaser in good faith may rely upon the real title being where, by the deed, it appears to be, and that he or she who wilfully or negligently permits property to stand in the name of another person, at least as apparent owner, cannot be heard to say that such is not true, to the prejudice of a person who, relying upon the apparent ownership, has bought and paid a valuable consideration for the land.

\* \* \* \* \* \*

"If a deed to land is made to A., in the absence of something upon its face to indicate that he holds in trust for some other person, by reason of such other person having paid the purchase money, or from some other reason, the law presumes, and persons dealing with A. in reference to such property, may, in the absence of notice to the contrary, rely upon the title being as it appears upon the deed \* \* \*."

In Gulf Production Company v. Continental Oil Company, 139 Tex. 183, 164 S.W.2d 488, our Supreme Court held that where the record of a mineral lease to a trustee did not disclose the beneficiary subsequent purchasers could buy from the trustee without being charged with constructive notice of other ownership. It is held that as applied to the facts here, the fact that the record of the royalty deed to Sabens showed he held same as trustee did not impose upon a purchaser the duty of inquiring and ascertaining who was the beneficiary and that they were not charged with constructive notice of other ownership. Appellees did not claim that in purchasing the royalty from Sabens, trustee, appellants had actual notice of Sabens' ownership. Under the authorities cited they did not have constructive notice. We conclude that appellants are innocent purchasers of such royalty. We hold that said liens did not follow the money paid into court by Sohio. Article 7425a; Castro v. Illies, 13 Tex. 229, 236; 13 Tex.Law Review 180; Crowley v. Adams Bros. & Prince, Tex.Civ.App., 262 S.W. 883; Thlocco v. Magnolia Petroleum Co., 5 Cir., 141 F.2d 934; South Texas Lumber Co. v. Nicoletti, Tex.Civ.App., 54 S.W.2d 893 (Writ Dis.); Steele v. Harris, Tex.Civ. App., 2 S.W.2d 537. See also Jackson v. United Producers' Pipe Line Co., Tex.Civ. App., 33 S.W.2d 540 (Writ Ref.); Linkenhoger v. American Fidelity & Cas. Co., 152 Tex. 534, 260 S.W.2d 884, 886, and Humble Oil & Refining Co. v. Andrews, Tex.Civ. App., 285 S.W. 894.

Although we approve many of the findings and conclusions of the trial court, because we believe that appellants are innocent purchasers of their royalty and that said liens did not follow the money paid into court by Sohio, we must reverse the judgment and remand the cause for proceedings in accord herewith. It is so ordered.

### On Motions for Rehearing

Prior to June 6, 1951, C. C. Allmand and wife owned the royalty in controversy. On that day they had executed an oil lease to Sohio Petroleum Company reserving a ⅛th royalty, for 15 years and as long thereafter as oil or gas should be produced in paying quantities. On the same day they executed and delivered a deed conveying to E. H. R. Sabens an undivided ¼th of said reserved royalty. Sabens and W. Edward Lee each paid for and owned a one-half of said one-fourth of a one-eighth term royalty, which shall, for convenience, hereafter be referred to as a ¼th royalty. Before recording said deed Sabens added "trustee" after his name as grantee in the deed. Thereafter, Sabens conveyed to Lee and his nominees Lee's ½ interest. The last such conveyance was on August 2, 1951, when Sabens conveyed to W. Edward Lee and his daughter ³⁄₂₈ths of said royalty, being the remaining interest then owned by Lee. Sabens then owned ¹¹⁄₂₈ths of said royalty. He owed Lee part of the purchase price for Lee's interest which Sabens had sold for Lee and, on September 7, 1951, Sabens, as an individual, conveyed his remaining ¹¹⁄₂₈ths royalty to Lee to secure that debt. Sabens paid Lee and at Sabens' request, Lee conveyed Sabens' remaining individually owned ¹¹⁄₂₈ths royalty interest to Murph Wilson, Sabens' attorney, on October 8, 1951. On October 16, 1951, Wilson conveyed to O. D. Harrison ⅓₂nds of said royalty and on October 20, 1951, Wilson conveyed ⅓₂nds thereof to Donley. On November 9, 1951, Sabens, "trustee", purported to convey certain royalty to Cecil Warren and on January 28, 1952, Sabens, "trustee", purported to convey more royalty to Warren. Before the conveyancies to Warren were made, Sabens, as trustee, had conveyed all the interest he ever held in trust and the remaining interest then owned by Sabens individually stood in the name of Wilson.

An abstract of a judgment against Sabens, now owned by The Youngstown Sheet and Tube Company, was filed for record in Taylor County, where the land is situated, on May 19, 1951. An abstract of a judgment against Sabens, now owned by Claude

S. Holly, was filed for record in Taylor County on July 13, 1951. Said judgments were duly abstracted, indexed and recorded and became liens against all real estate then owned by Sabens in Taylor County.

The titles of Donley and Harrison were acquired through Sabens as an individual, not as a trustee. In other words, Sabens, as an individual, conveyed to Lee, as a mortgage, and Lee, for Sabens, conveyed to Wilson, and Wilson, for Sabens, conveyed to Donley and Harrison. The two deeds from Sabens, trustee, to Warren were, as stated, executed after Sabens, trustee, had conveyed all interest in the royalty that he ever held as trustee and when Sabens remaining interest stood in Wilson's name. The court deducted from Sabens' individual interest held by Wilson the royalty purported to be conveyed by Sabens, trustee, to Warren and decreed Warren to be the owner. This portion of the judgment was evidently based upon the fact that Wilson then held said interest for Sabens. The royalty awarded Warren was recovered from Wilson who held it for Sabens individually through the chain of title stated above.

The court held that Youngstown's and Holly's judgments were secured by liens on Sabens' royalty in place in May and July, respectively, before Donley, Harrison, and Warren obtained their deeds. Donley and Harrison did not purchase from Sabens, trustee, and their deeds conveyed Sabens' individual interest in the royalty. We do not consider it of controlling importance that thereafter Sabens executed to Donley and Harrison so-called correction deeds purporting to convey the same royalty as a trustee. Sabens' said individual interests had already passed by his previous deeds to said grantees, subject, however, to said judgment liens. Gauss-Langenberg Hat Co. v. Allums, Tex.Civ.App., 184 S.W. 288 (Writ Ref.). There is no contention that Lee's interest is subject to said liens.

Appellants, Donley, Harrison and Warren, presented only two real contentions, first, that the court erred in holding that said abstracts of judgments fixed liens against the royalty then owned by Sabens individually and, second, that said liens were enforceable against the proceeds of the oil attributable to said interests, which were paid into court by Sohio, who produced and sold it. We approve the holding that said abstracts of judgments fixed liens against the royalty interest then owned by Sabens individually and thereafter acquired by Donley, Harrison and Warren from or through Sabens as an individual. In Texas, where royalty is realty, the filing of an abstract of judgment fixes a lien against royalty. 49 C.J.S. Judgments § 482, p. 922. A judgment lien attaches to realty but not to rents, issues and profits therefrom. 49 C.J.S. Judgments § 472, pp. 906, 907. We have not held that the money deposited in court by Sohio is either of these, as appellees seem to think. The fact that Sabens' individual interest in the royalty was not disclosed by the record did not defeat said liens against the interest he actually owned. 26 Tex.Jur. 380; Traders' Nat. Bank v. Price, Tex.Com.App., 228 S.W. 160; First State Bank of Amarillo v. Jones, 107 Tex. 623, 183 S.W. 874; Blankenship v. Douglas, 26 Tex. 225, 229; Payne v. Bracken, 131 Tex. 394, 115 S.W.2d 903, 905; Calvert v. Roche, 59 Tex. 463; Tex.Dig. Judgment ⊗775–780; Parks v. West, Tex.Civ.App., 274 S.W. 164, 165; Steele v. Harris, Tex. Civ.App., 2 S.W.2d 537. In Brown v. Hodgman, 124 W.Va. 136, 19 S.E.2d 910, it was expressly held that where a judgment debtor held record title as trustee a judgment against him as an individual attached to whatever interest he actually owned in realty.

The lien of an abstract of judgment in Texas attaches to whatever interest in realty is actually owned by the judgment debtor when it is filed. Art. 5449. It is immaterial, except as to those shown to be innocent purchasers, whether or not the judgment debtor's interest appears of record. Whatever interest he actually owns is bound by the lien. 49 C.J.S. Judgments § 478, pp. 912, 913; 26 Tex.Jur. 380; Steele

v. Harris, Tex.Civ.App., 2 S.W.2d 537; Franke v. Lone Star Brewing Co., 17 Tex. Civ.App. 9, 42 S.W. 861, 862 (Writ Ref.); Fikes v. Buckholts State Bank, Tex.Civ. App., 273 S.W. 957 (Writ Dis.); 43 A.L.R. 44; First State Bank of Amarillo v. Jones, 107 Tex. 623, 183 S.W. 874, 876; Payne v. Bracken, 131 Tex. 394, 115 S.W.2d 903, 904; South Texas Lumber Co. v. Nicoletti, Tex. Civ.App., 54 S.W.2d 893, 896 (Writ Dis.); 33 C.J.S. Executions § 51, p. 182; Cheswick v. Weaver, Tex.Civ.App., 280 S.W.2d 942. Appellants were not innocent purchasers. 92 C.J.S. Vendor & Purchaser §§ 326–371, pp. 236, 237–305; Cheswick v. Weaver, Tex. Civ.App., 280 S.W.2d 942 (RNRE); Ryle v. Davidson, 102 Tex. 227, 115 S.W. 28; McDonald v. Galt, Tex.Civ.App., 173 S.W. 2d 962; Farmers Mut. Royalty Syndicate v. Isaacks, Tex.Civ.App., 138 S.W.2d 228.

■ We find no authority for the holding that appellee's judgment liens can be enforced against the money paid into court by Sohio. Said lien holders did not sue for damages or conversion. There was no garnishment. Their right to said money depends solely upon their judgment liens. The statute that created them provides only that abstracts of judgments shall constitute liens on "real estate". Such liens do not attach to personal property. 49 C.J.S. Judgments § 472, pp. 906, 907; Tunnell v. Johnson, Tex.Civ.App., 209 S.W. 451; Castro v. Illies, 13 Tex. 229, 236; 30A Am.Jur. 529; Crowley v. Adams Bros. & Prince, Tex. Civ.App., 262 S.W. 883. Appellees had no right to, in effect, foreclose their judgment liens against the money paid into court by Sohio.

Humble Oil & Refining Company v. Andrews, Tex.Civ.App., 285 S.W. 894 (Writ Ref.) and State ex rel. Attorney General v. Hatcher, 115 Tex. 332, 281 S.W. 192, are, apparently, urged as supporting the lienholder's judgment for the money. In Humble Oil & Refining Company v. Andrews plaintiff's cause of action was for damages for conversion. It was there held that a cause of action for conversion of attached property or for depleting the security did not accrue until a sale of the remaining security showed the creditor could not collect his judgment therefrom. The Hatcher case is distinguishable by its holding that it was immaterial whether oil when severed becomes personalty because the constitution provides that "proceeds" of land shall become part of the permanent fund. See also Reisberg v. Hubbard, Tex.Civ.App., 326 S. W.2d 605. (Most of appellants' points are based upon the assumption that appellants' royalty was acquired from Sabens as trustee. We erroneously so assumed in our former opinion.) Appellee's motions are granted to the extent that we now hold that they have liens against appellants' royalty in place, otherwise all motions are overruled. This does not change the judgment heretofore entered.